The STATE of Ohio, Appellant and Cross–Appellee,

v.

SHUE, Appellee and Cross–Appellant.

[Cite as *State v. Shue* (1994), 97 Ohio App.3d 459.]

Court of Appeals of Ohio,
Summit County.

No. 16589.

Decided Sept. 21, 1994.

*Lynn Slaby,* Summit County Prosecuting Attorney, and *Philip Bogdanoff,* Assistant Prosecuting Attorney, for appellant and cross-appellee.

*J. Dean Carro,* Appellate Review Office, School of Law, University of Akron, for appellee and cross-appellant.

BAIRD, Presiding Judge.

This cause comes before the court upon the appeal of the state of Ohio from the decision of the Summit County Court of Common Pleas dismissing a physical harm specification against Jonathan R. Shue. Shue cross-appeals the verdict of the trial court which found him guilty of murder.

The charges against Shue arose out of a June 22, 1993 incident in which Shue, then sixteen, shot and killed Mark Petersen, thirteen. On October 6, 1993, Shue was indicted on one count of murder (R.C. 2903.02), with firearm specification (R.C. 2941.141), and one count of receiving stolen property (R.C. 2913.51), with both a firearm specification (R.C. 2941.141) and a physical harm specification (R.C. 2941.143). On December 8, 1993, a jury found Shue guilty of all charges. Despite the jury's finding of guilt, the trial court dismissed the physical harm specification to the count of receiving stolen property, and then dismissed the firearm specification, reasoning that the firearm specification did not apply without the physical harm specification. Shue was sentenced to fifteen years to life for murder, three years for possession of a firearm, and one year for receiving stolen property.

It is from the dismissal of the specifications that the state brings its appeal, citing one assignment of error. Shue appeals the jury's finding of guilt on the murder charge, citing two assignments of error.

## STATE'S ASSIGNMENT OF ERROR

"The trial court committed error when it dismissed the physical harm specification prior to sentencing the defendant."

Prior to sentencing, Shue filed a motion to dismiss the physical harm and the firearm specifications to the receiving stolen property charge, essentially arguing that application of the specifications in this instance is contrary to legislative intent and renders the applicable statutes unconstitutionally vague. Count 2 of the indictment charged that, on or about June 22, 1993, Shue received stolen property, a fourth degree felony, in violation of R.C. 2913.51. The charge resulted from Shue's use of a stolen .32 caliber revolver in the June 22 shooting of Petersen. Specification 2 to Count 2 charged that Shue, during the commission of the crime of receiving stolen property, caused physical harm, with a deadly weapon, to a person in violation of R.C. 2941.143.

Shue and a companion stole the .32 caliber Iver Johnson five-shot revolver several weeks before the shooting of Petersen. There was conflicting testimony at trial as to who kept the revolver during the several-week period prior to the shooting. Shue's accomplice in stealing the revolver indicated that Shue and a third party alternately kept the gun, that the accomplice was given the gun once by Shue at a party, that the gun was loaded at that time, that he returned the gun to Shue the next day, and that he saw Shue take the gun the night of the shooting just prior to Petersen's death. Although other testimony conflicts as to other occasions when Shue had the revolver, several witnesses, including Shue, place the gun in Shue's possession at the time the shooting occurred.

It is the state's position, and the jury agreed, that, pursuant to R.C. 2913.51, Shue was guilty of receiving stolen property at the time of the shooting because he "retained" the stolen firearm. As a result, the state argues, both specifications apply. Shue argues that he "received" the revolver when he stole it and that, since physical harm did not occur to anyone at the time of theft, the specifications do not apply. Shue's position is that receiving stolen property is not a continuing crime.

R.C. 2913.51 provides:

"(A) No person shall receive, *retain,* or dispose of property of another, knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

"(B) Whoever violates this section is guilty of receiving stolen property. * * * [I]f the property involved is any of the property listed in section 2913.71 of the Revised Code, * * * receiving stolen property is a felony of the fourth degree. * * *" (Emphasis added.)

Pursuant to R.C. 2913.71, a violation of R.C. 2913.51 is a felony of the fourth degree if the property involved is a firearm. R.C. 2941.143 permits the imposition of an indefinite term of incarceration if the indictment specifies that, during the commission of the offense charged, the offender caused physical harm to any person with a deadly weapon. An indefinite term for a fourth degree felony, pursuant to R.C. 2929.11(B)(7), is a minimum term of either eighteen months, two years, thirty months, or three years, and a maximum term of five years. If no physical harm is caused during the commission of a fourth degree felony, the term of incarceration is a definite term of either six months, one year, or eighteen months.

Shue argues that the physical harm specification, as applied here to a charge of receiving stolen property, was too broadly applied. He claims that the legislative intent of R.C. 2941.143 does not contemplate the application the state makes here. He argues that R.C. 2941.143 is ambiguous because it is unclear when "commission" of the crime of receiving stolen property occurred. Essentially, he asks this court to find that the crime of receiving stolen property, which prohibits the "receiv[ing], retain[ing], or dispos[ing] of the property of another," in this instance really means "receiving" only because the offense was "committed" when he initially stole the revolver and not when he retained the revolver and shot Petersen. Since no harm to a person was caused at the time of the theft, Shue argues, the physical harm specification cannot apply.

We do not agree. The word "retain" means to "keep," "hold," or "to hold in possession or use." *Union Commerce Bank v. Commr. of Internal Revenue* (C.A.6, 1964), 339 F.2d 163, 167, 31 O.O.2d 252, 256. If the legislature had intended that the crime of receiving stolen property apply only to the moment when property is "received," it would have worded the statute accordingly. See, also, *State v. Homer* (1992), 78 Ohio App.3d 477, 478, 605 N.E.2d 426, 426 (a juvenile who retains stolen property four months past the age of majority may be tried as an adult for receiving stolen property).

Shue argues that this court has consistently held in a long line of cases that the act of receiving even multiple objects at one time results in only one charge. In *State v. Austin* (Feb. 16, 1984), Summit App. No. 11298, unreported, at 3–5, 1984 WL 4764, for example, this court held that two counts of receiving stolen property should have been merged when three credit cards at issue likely were stolen or "received" at the same time. In *Austin,* the defendant was apprehended when he attempted to use one of the cards, a Sears charge card. A

subsequent search of his car uncovered the two other stolen cards. Austin was charged with two counts of receiving stolen property, one related to his efforts to use, or "dispose" of the Sears card as the state argued, the other related to his "retention" of the two cards found in the car. Finding that in using the Sears card Austin had not disposed of it, or transferred control, and that the theft, or receipt, of all three cards likely occurred at one time, we found that the two counts of receiving stolen property were offenses of similar import and should have been merged.

*Austin,* however, is not analogous to the case at bar. If Shue were arguing that the offenses of theft and receiving were offenses of similar import, *Austin* would buttress his position. However, there is no evidence in the record that Shue was ever charged with theft, nor does he argue that such was the case. In the absence of a theft charge, the state had the option, pursuant to R.C. 2913.51, to charge him with receiving and, as we have already concluded, receiving can occur while one is in the act of retaining stolen property.

In *State v. Witwer* (1992), 64 Ohio St.3d 421, 596 N.E.2d 451, syllabus, the court held that a court may impose the indefinite term of incarceration prescribed by R.C. 2929.11(B)(7) where an accused has been convicted of a fourth degree felony, the commission of which caused harm to any person, if the indictment which initiated the criminal proceedings contains the appropriate specification and the accused was convicted thereon. The *Witwer* court found it unnecessary to undertake a constitutional analysis when analyzing R.C. 2941.143 because issues of multiple penalties for the same crime were not present. Accordingly, the *Witwer* court concluded that there was no constitutional defect. *Id.* at 428, 596 N.E.2d at 456–457. "R.C. 2941.143 merely sets forth the procedure which must be followed in order to sentence one convicted of a fourth degree felony to the indefinite term of incarceration prescribed by R.C. 2929.11(B)(7)." *Id.* Any question as to whether a defendant has notice of the breadth of sentencing possibilities before him is answered by the requirement that the specification be included in the indictment. *Id.* at 429, 596 N.E.2d at 457.

The dissent in *Witwer* believed, as Shue does, that the majority went beyond the legislative intent of R.C. 2941.143 in its decision:

"[I]t should be assumed that the legislature enacted Revised Code 2941.143 for its obvious purpose: to punish those offenders who commit what are necessarily violent offenses at least as severe[ly] if not more severe[ly] than other non-violent offenders. Any other interpretation of Revised Code 2941.143 renders it all but ineffective in accomplishing the clear legislative intent behind it." *Witwer* at 429–430, 596 N.E.2d at 457.

The dissent reasoned that, since aggravated vehicular homicide is not an "offense of violence" as defined by the Criminal Code of Ohio, the indefinite

sentence permitted by R.C. 2941.143 should not be permitted. R.C. 2901.01(I)(3) defines "offense of violence" as "[a]n offense, other than a traffic offense, under an existing or former municipal ordinance or law of this or any other state of the United States, committed purposely or knowingly, and involving physical harm to persons or a risk of serious physical harm to persons[.]" Since aggravated vehicular homicide requires a culpable mental state of recklessness, and not "knowledge, intent or scienter," the dissent concluded that R.C. 2941.143 is not applicable.

Whether under the majority analysis in *Witwer* or the dissent's more restrictive analysis of legislative intent relative to R.C. 2941.143, Shue's argument fails. Since the crime of receiving stolen property requires "knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense," the requisite scienter urged by the dissent in *Witwer* is present here. Shue knew the revolver was stolen, since he was one of the people who had stolen it. Accordingly, having found that R.C. 2913.51(A) permits one to commit the offense of receiving stolen property by "retaining" property known to be stolen, and finding that the application here of R.C. 2941.143 is neither unconstitutionally vague nor beyond legislative intent, the state's assignment of error is sustained.

## SHUE'S ASSIGNMENT OF ERROR I

"The evidence produced at trial was insufficient for any rational trier of fact to conclude beyond a reasonable doubt that Jonathan Shue had purposely acted. Further, the conviction was against the manifest weight of the evidence, in violation of the Sixth and Fourteenth Amendments of the United States Constitution. (Passim.)"

Shue argues that the state failed to produce sufficient evidence to prove, beyond a reasonable doubt, that he acted purposely in shooting Petersen, a required element for the crime of murder. Shue further argues that the verdict was against the manifest weight of the evidence.

R.C. 2903.02(A) provides that "[n]o person shall purposely cause the death of another." R.C. 2901.22(A) provides that:

"A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

Crim.R. 29(A) requires a trial court to enter a judgment of acquittal on offenses charged in an indictment if the evidence is insufficient to sustain a conviction. Evidence is insufficient if, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could not have found all the essential elements of the offense beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720–721. Even if evidence is sufficient, a verdict may still be against the manifest weight of the evidence.

"In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010–1011; *State v. Martin, supra,* 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720–721.

This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. *Otten, supra,* 33 Ohio App.3d at 340, 515 N.E.2d at 1010–1011; *Martin, supra,* 20 Ohio App.3d at 175, 20 OBR at 218–219, 485 N.E.2d at 720–721.

Evaluating evidence and assessing credibility are primarily for the trier of fact. *Ostendorf–Morris Co. v. Slyman* (1982), 6 Ohio App.3d 46, 47, 6 OBR 156, 157–158, 452 N.E.2d 1343, 1345–1346; *Crull v. Maple Park Body Shop* (1987), 36 Ohio App.3d 153, 154, 521 N.E.2d 1099, 1100–1101. Absent extreme circumstances, an appellate court will not second-guess determinations of weight and credibility. *Sykes Constr. Co. v. Martell* (Jan. 8, 1992), Summit App. No. 15034, unreported, at 19, 1992 WL 2919.

Purpose or intent can be established by circumstantial evidence. *State v. Nicely* (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236; *State v. Jenks, supra,* 61 Ohio St.3d 259, 574 N.E.2d 492. Intent may be ascertained from the surrounding facts and circumstances in the case. *State v. Johnson* (1978), 56 Ohio St.2d 35, 38, 10 O.O.3d 78, 80, 381 N.E.2d 637, 639–640; *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302–303. The element of purpose required by R.C. 2903.02 may be presumed where the natural and probable consequences of a wrongful act are to produce death. *State v. Robinson* (1954), 161 Ohio St. 213, 53 O.O. 96, 118 N.E.2d 517, paragraph five of the syllabus; *State v. Fugate* (1973), 36 Ohio App.2d 131, 65 O.O.2d 155, 303 N.E.2d 313, paragraph one of the syllabus. Intent may be inferred from all of the surrounding circumstances, such as the instrument used to produce death and the manner of inflicting the fatal wound. *State v. Robinson, supra; State v. Fugate, supra.*

"Circumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence. * * * Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. * * *

" * * * Once the jury is properly instructed as to the heavy burden the state bears under the 'guilt beyond a reasonable doubt' standard, the jury is then free to choose between competing constructions." (Citations omitted.) *State v. Jenks, supra,* 61 Ohio St.3d 259, 272–273, 574 N.E.2d 492, 502–503.

■ There was substantial testimony in the case *sub judice* that Shue removed the revolver from his pants, placed bullets in it, held it either against Petersen's chest or inches from it, pulled the trigger, and shot. Petersen fell to the ground moments after the shot. There was no argument or prior animosity between Shue and Petersen. In addition to Shue, one witness, a fifteen-year-old companion, testified that Petersen asked Shue, prior to being shot, whether the bullets were real and that Shue indicated they were blanks. The same witness testified that, when Shue put the revolver to Petersen's chest, Petersen said, "Don't play; it wouldn't be funny if it went off" and that, after the shooting, Shue said, "I didn't mean to shoot you, man." Several witnesses testified that, after Petersen fell to the ground, Shue yelled at him to get up and "don't play around." A few witnesses testified that Shue yelled for someone to call 9–1–1. Other testimony indicated that, prior to shooting, Shue said something about Russian Roulette to Petersen. Moments after the shooting, Shue fled the scene, indicated to a friend that he had shot Petersen, and enlisted the help of the friend in hiding the gun. En route to hiding the gun at railroad tracks under a bridge, Shue met up with two other acquaintances to whom he admitted the shooting. Ultimately, he and his friend hid the gun in a bag and placed it under a large rock. Several minutes later, Shue was apprehended while leaning against a pole and talking to an acquaintance.

One of the policemen who interviewed witnesses testified that Michael Lloyd, one of the witnesses who encountered Shue on his way to hide the gun, told him that Shue admitted playing around with a gun, which he put to a boy's chest and it went off. While on the stand, Lloyd did not recall the statements. Several police officers testified that, when Shue was apprehended he showed no remorse, became disorderly, and admitted that "I shot the mother fucker." Officers also testified that Shue shouted from the police car to an acquaintance on the street, "Hey, Pete, I'm going to jail." He also bragged about not being able to get more than fifteen years.

The major conflicting testimony is that of Shue himself, who indicated that he was carrying the gun and bullets because he was afraid of a nineteen year old who had previously threatened to jump him. Shue testified that, while he was straddling his bike, he got dizzy, the bike started to fall, and the gun accidentally discharged. No other testimony supported Shue's version of the shooting. Despite his admission that he carried the gun and bullets as protection from the nineteen year old, Shue testified that he did not purposely or intentionally point a gun at Petersen or pull the trigger.

Several witnesses testified that they had seen Shue with the gun on previous occasions and that, on at least one occasion, he was with a friend who shot the gun a couple of times at the railroad tracks. Several witnesses testified to seeing Shue on other occasions either putting bullets in the gun or removing them. The chief deputy coroner testified that Petersen died from a single gunshot wound to the chest that went through his heart and ruptured his aorta. The state introduced forensics evidence that the revolver used by Shue held projectiles of the type that killed Petersen and that the revolver took eleven-and-a-half pounds of trigger-pull to fire.

A jury can reasonably infer that a defendant formed the specific intent to kill from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death, coupled with relevant circumstantial evidence. *State v. Widner* (1982), 69 Ohio St.2d 267, 270, 23 O.O.3d 265, 266–267, 431 N.E.2d 1025, 1028. Moreover, it is well within the purview of the jury to determine from the evidence whether the requisite purpose was formed.

Our review of the evidence, viewed in a light most favorable to the prosecution, indicates that there was sufficient evidence to support the jury's finding that Shue acted purposely when he shot Petersen. Moreover, our review of the entire record in this case establishes that the jury did not lose its way in determining guilt and that its verdict is not against the manifest weight of the evidence.

Shue's first assignment of error is not well taken.

## SHUE'S ASSIGNMENT OF ERROR II

"The trial court committed prejudicial error when it refused Jonathan Shue's proposed jury instruction on mistake of fact, thereby violating his right to present a defense under the Sixth Amendment to the United States Constitution."

In his second assignment of error, Shue argues that the court's refusal to use his proposed jury instruction on mistake of fact violated his Sixth Amendment right to a defense. Shue's proposed jury instruction is as follows:

"MISTAKE OF FACT 4 OJI 409.03

"1. Unless the Defendant had [the] required purpose to cause death he is not guilty of the crime of murder.

"2. In determining whether the Defendant had the required purpose, you will consider whether he acted under a mistake of fact regarding whether the weapon contained blanks or would fire a projectile.

"3. If the Defendant had an honest belief arrived at in good faith in the existence of such facts and acted in accordance with the facts as he believed them to be, he is not guilty of murder as a purpose to cause death of another is an essential element of that defense."

In refusing to give the proposed instruction, the court noted that there were a number of issues that the jury was required to consider regarding purpose and intent and that the court did not believe that the instruction, as submitted, was accurate. The court did, however, instruct the jury at length on the issue of purpose:

"The first charge in the indictment is the offense of murder. Now, murder is purposely causing the death of another. Before you can find the defendant guilty of this charge, you must find beyond a reasonable doubt that on or about the 22nd day of June, 1993, in Summit County, Ohio, the defendant, Jonathan Shue, purposely caused the death of Mark Petersen.

"Now I have used certain words and phrases which require definition for purposes of this trial. The first word is purposefully. Purposely, purpose to cause the death of another is an essential element of the offense of murder.

"A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to cause the death of Mark Petersen. Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result. To do an act purposely is to do it intentionally and not accidentally.

"Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct.

"Now the purpose with which a person does an act is determined from the manner in which it is done, and any weapon used, and all the other facts and circumstances in evidence. If a wound is inflicted upon a person with a deadly weapon in a manner calculated to inflict great bodily harm or destroy life, the purpose to cause death may be inferred from the use of the weapon. Proof of

motive is not required. The presence or absence of motive is one of the circumstances bearing upon purpose.

"Now you shall consider all of the evidence introduced by the state to indicate the defendant's intent and all of the evidence introduced by the defendant to indicate his lack of intent, in determining whether the defendant specifically intended to cause the death of Mark Petersen. No person shall be convicted of murder unless he is specifically found to have intended to cause the death of another."

Shue argues that *Cincinnati v. Epperson* (1969), 20 Ohio St.2d 59, 49 O.O.2d 342, 253 N.E.2d 785, paragraph one of the syllabus, requires that, if requested special instructions to the jury are correct, pertinent and timely presented, they must be included in the general charge. In *Epperson,* however, the trial court refused to give the special instructions *and* did not include the substance of the requested instruction in the general charge. *Id.* at 61, 49 O.O.2d at 343, 253 N.E.2d at 787. Such is not the case here.

Shue also argues that mistake of fact is a defense to murder since, when a defendant has an honest purpose, such a purpose provides an excuse for an act that would otherwise be deemed criminal. *State v. Snowden* (1982), 7 Ohio App.3d 358, 363, 7 OBR 458, 462–463, 455 N.E.2d 1058, 1065–1066. *Snowden,* however, involved the taking of money, thought to belong to a debtor, which defendant believed was rightfully his when, in fact, he mistakenly took someone else's money. There was substantial testimony supporting the defendant's mistaken belief in *Snowden,* including the defendant's knowledge that the debtor had not yet picked up her pay, that defendant was told the pay was in or near the cash register from which he took the money, that defendant announced he wanted *his* money, that the debtor agreed to pay him, and that the cash register lights displayed the exact amount actually owed to the defendant. *Id.* In the case *sub judice,* the only witness who testified that he thought the gun had blanks, instead of live ammunition, was Shue. However, Shue's own testimony that he willfully carried the gun, and two bullets, on the evening of June 22 because "a couple of days earlier me and this guy by the name of Franklin Roberts had gotten into a fight, and he said that he was going to jump me * * * " conflicts with the concept of an "honest belief arrived at in good faith." If the gun, along with the bullets, were taken for protection, it belies Shue's assertion that when he loaded the bullets into the gun, pointed it at Petersen from no more than inches away, and applied eleven-and-a-half pounds of pressure to the trigger, he had an honest purpose because he thought he was only firing a blank into Petersen. One other witness corroborated that Shue told Petersen the gun had blanks.

By statute, a jury charge must state all matters of law necessary for the information of the jury in rendering its verdict. R.C. 2945.11. Such

instructions should be tailored to the facts of each case. *Avon Lake v. Anderson* (1983), 10 Ohio App.3d 297, 299, 10 OBR 472, 474–475, 462 N.E.2d 188, 190–191. Nevertheless, reversible error will not lie unless the defense was prejudiced. R.C. 2945.83(D); Crim.R. 33(E)(4). "We emphatically remind trial courts that they should limit definitions, where possible, to those definitions provided by the legislature in order to avoid unnecessary confusion and needless appellate challenges." *State v. Williams* (1988), 38 Ohio St.3d 346, 356, 528 N.E.2d 910, 922, fn. 14. Consequently, amplification of the statutory definitions is generally inadvisable.

R.C. 2903.02(A), which sets forth the elements of murder, states simply that "[n]o person shall purposely cause the death of another." R.C. 2901.22(A) states that "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

Our review of the proposed jury instruction and the jury instruction given by the court indicates that Shue was not prejudiced by the omission of the proposed instruction. The court appropriately limited its instruction to the substance of the statutory definition of murder and followed the directive of *Williams, supra,* and avoided unnecessary amplification. Moreover, the substance of the jury instruction given contained the substance of the proposed instruction.

Shue's second assignment of error is not well taken.

The state's assignment of error is sustained. Shue's assignments of error are overruled. The order of the trial court granting Shue's motion to dismiss the specifications to the charge of receiving stolen property is hereby reversed and the sentence heretofore imposed upon the defendant is vacated. The case is remanded for resentencing consistent with this opinion.

*Judgment accordingly.*

COOK and DICKINSON, JJ., concur.