DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Heather Harper, the natural mother of Jason Harper, appeals an order granting permanent custody of Jason to Lorain County Children Services ("LCCS"). This Court affirms.
 I.
Jason Harper was born to appellant on July 14, 1997. Appellant left Jason with his maternal grandmother, Mary Skidmore, while appellant was incarcerated in the Mason County, West Virginia Jail. On October 27, 1997, Gallia County Children's Services filed a motion for emergency temporary custody of Jason, alleging that Skidmore was homeless and involved in violent domestic relationships. On October 30, 1997, the Gallia County Court of Common Pleas, Juvenile Division, awarded temporary custody of Jason to Lisa Higginbotham, Skidmore's sister. On November 14, 1997, the matter was transferred to the Lorain County Court of Common Pleas, Juvenile Division, as Higginbotham was a resident of Lorain County. On December 12, 1997, appellant appeared for a pretrial. A LCCS caseworker discussed a case plan with appellant and informed her that, if she completed the objectives, reunification with Jason would be possible. Immediately after the pretrial, appellant was arrested on an out-standing warrant from West Virginia. Appellant subsequently returned to Lorain County but did not contact LCCS.
Jason remained in the care of Higginbotham until January 1998, when she requested Jason's removal from her home. No other relative was willing to care for Jason. LCCS received temporary custody of Jason, who was placed in a licensed foster home. LCCS made numerous attempts to locate appellant and Jason's father. LCCS was finally able to locate appellant in June 1998, when the Lorain Sheriff's Department called LCCS to inform them that appellant had been arrested and was in the Lorain County Jail. A caseworker from LCCS went to the jail to meet with appellant to update her on Jason's status and to impress upon her the importance of compliance with the case plan. LCCS informed appellant that they would be seeking permanent custody of Jason.
Appellant was extradited to West Virginia, found guilty of neglect of an incapacitated adult and petty larceny, and placed on two years unsupervised probation. She returned to Lorain, Ohio and gave birth to another child. Appellant met with Jason on July 15, 1998, for the first time since he was placed in the care of LCCS on October 30, 1997. LCCS scheduled sixteen visits between Appellant and Jason. Appellant attended a total of six visits.
Jason's father was never located. Claiming that appellant had failed to comply with the case plan, LCCS filed for permanent custody of Jason. On December 10, 1998, the Lorain County Court of Common Pleas, Juvenile Division, granted LCCS permanent custody of Jason. Appellant timely appeals.
 II.
Appellant's sole assignment of error states:
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND IN VIOLATION OF [R.C.] 2151.414, THE FOURTEENTH AND NINTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 1 OF THE OHIO CONSTITUTION, WHEN IT TERMINATED THE PARENTAL RIGHTS OF APPELLANT AND GRANTED PERMANENT CUSTODY OF THE MINOR CHILD TO LORAIN COUNTY CHILDREN SERVICES, WHERE THE EVIDENCE FAILED TO SATISFY THE REQUISITE STANDARD OF PROOF.
This Court interprets this assignment of error as challenging the weight of the evidence supporting the trial court's award of permanent custody. The same standard applies in determining whether both criminal and civil judgments are against the manifest weight of the evidence. Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. Therefore, this Court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.
Id., quoting State v. Shue (1994), 97 Ohio App.3d 459, 466. This action is reserved for the exceptional case, where the judgment is "so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice[.]" Hardiman v. Zep Mfg. Co.
(1984), 14 Ohio App.3d 222, 226, quoting Royer v. Bd. of Edn.
(1977), 51 Ohio App.2d 17, 20.
In cases not involving an abandoned or orphaned child, a trial court is required to find, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody and (2) that the child cannot or should not be placed with either of the child's parents within a reasonable time. R.C. 2151.414(B).
 The standard of clear and convincing evidence requires more than a mere preponderance of the evidence, but it does not rise to the level of certainty that is required of the beyond a reasonable doubt standard in criminal cases. Rather, it must produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.
(Citations omitted.) In re Rankin (Dec. 23, 1998), Summit App. No. 19118, unreported.
Appellant argues that LCCS failed to establish the best interest prong by clear and convincing evidence. In determining whether permanent custody is in the child's best interest, a trial court,
 shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.414(D)[1].
The evidence in the instant case showed that Jason did not have a strong bond with his mother. Jason did not seem to recognize appellant and appeared hesitant and fearful of appellant during the visitation sessions. Conversely, Jason had a good relationship with his foster parents. Jason would look to his foster parents for comfort and reassurance when appellant would attempt to pick him up during the visits and would cry when the foster parents left the room. The guardian ad litem report revealed that Jason's development was on target and that he appeared to be extremely happy in the foster parents' care.
There is nothing in the record to indicate with whom Jason preferred to live, as he was only seventeen months old at the time of the permanent custody hearing. Jason had lived with appellant for just a brief period of time. Appellant had then left Jason in the care of his maternal grandmother. Then Jason was removed from his grandmother's care by Gallia County Children Services when he was three months old. Custody of Jason was transferred to LCCS when he was approximately six months old, and he was placed in the care of his foster parents.
Jason's biological father has not been located, and has neither acknowledged Jason nor established paternity. Jason has bonded with his foster parents and they are willing to adopt him.
Based on all of this evidence, this Court cannot say that the trial court's finding that permanent custody is in Jason's best interest is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice. Appellant's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
DONNA J. CARR FOR THE COURT WHITMORE, J.
BATCHELDER, J.
CONCUR
[1] R.C. 2151.414 has been amended. The former version applies in the case sub judice.