DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Jane Knight appeals from the December 8, 1998 judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and awarded permanent custody of her children Patrika, Markeddi, and Terrill, to the Summit County Children Services Board. This Court affirms.
 I.
Appellant is the natural mother[1] of Patrika Knight, born August 15, 1991, Markeddi Freeman, born August 14, 1992, and Terrill Knight, born December 9, 1995.[2]
Summit County Children Services Board ("CSB") took protective custody of Patrika pursuant to Juv.R. 6, on October 28, 1996, after the child had been hospitalized for seizures and hallucinations allegedly caused by appellant's medical neglect. Patrika's doctor reported that he believed that the child may have experienced seizures for twelve to thirteen hours before she was taken to the hospital, and although the extent of the damage could not be determined at that time, he found signs of brain damage that resulted from the prolonged seizures. The following day CSB filed complaints for emergency temporary custody of Patrika, Markeddi, and Terrell, alleging that Patrika was dependent and neglected and that Markeddi and Terrill were dependent. On October 30, 1996, the court awarded CSB emergency temporary custody of all three children.
Hearings were held in December 1996, and January 1997. Patrika was adjudicated a neglected and dependent child and was ordered to remain in the temporary custody of CSB. Markeddi and Terrill were adjudicated dependent and were permitted to be returned to appellant under CSB's protective supervision. A case plan was adopted that required appellant to cease using all drugs and alcohol, to engage in counseling for depression, to learn how to address Patrika's and Terrill's medical needs,[3] and to create a stable, independent living environment appropriate for children.[4]
CSB was granted emergency temporary custody of Markeddi and Terrill and continued temporary custody of Patrika on May 7, 1997, after a CSB social worker went to appellant's home and found appellant incoherent, lying on the floor. Appellant told the social worker to take Markeddi and Terrill because she "needed a break." The magistrate found that appellant had a chronic history of substance abuse, that she had been intoxicated during two visitations and a home visit, and that she appeared intoxicated at that hearing.
On June 16, 1997, a dispositional hearing was held. The court ordered that Markeddi and Terrill be committed to the temporary custody of CSB and that appellant provide a weekly urine sample to the Community Drug Board.
On September 2, 1997, another dispositional hearing was held. CSB moved the court for a six-month extension of temporary custody of all three children on the basis that appellant had made a dramatic improvement in her behavior. CSB reported that appellant had been visiting with her children on a regular basis and that she had been interacting appropriately with them. The court granted the six-month extension to allow appellant the opportunity to work on her case plan and to enable her to reunify with her children.
CSB moved to modify temporary custody of the children to protective supervision on February 24, 1998, because appellant had continued to comply with the case plan. CSB had requested that the terminations occur progressively to allow appellant to adapt to the children's needs. On March 18, 1998, the magistrate found that appellant had substantially complied with the terms of the case plan, ordered that Markeddi be returned to appellant under CSB's protective supervision, and ordered that Patrika and Terrill continue in CSB's temporary custody.
A review hearing was held on April 14, 1998. The magistrate found that appellant had not found appropriate housing, that appellant had been resistant to CSB's efforts to help her find housing, and that her living conditions were not appropriate for children. The court permitted Markeddi to remain in appellant's care under CSB's protective supervision and ordered Terrill and Patrika to remain in CSB's custody.
On May 18, 1998, Markeddi was placed in the emergency temporary custody of CSB after appellant was arrested for felonious assault for attacking her boyfriend with a knife. In September 1998, the court granted CSB's motion for a change of disposition regarding Markeddi from emergency temporary custody to temporary custody.
On September 16, 1998, CSB filed for permanent custody of all three children. On December 8, 1998, the court found that appellant had failed to substantially remedy the conditions that prompted the removal of the children from her care and that it was in the best interest of the children that her parental rights be terminated. The court further found, by clear and convincing evidence, that it was in the best interest of the children to grant permanent custody of Patrika, Markeddi, and Terrill to CSB.
Appellant timely appeals, asserting two assignments of error.
 II.
Appellant's first assignment of error states:
 THE RULING OF THE TRIAL COURT GRANTING PERMANENT CUSTODY TO THE SUMMIT COUNTY CHILDREN [sic] SERVICES BOARD WAS ERROR AS THE STATE DID NOT MEET THE REQUIREMENTS FOR GRANTING PERMANENT CUSTODY AS SET FORTH BY [R.C.] 2151.41.4.
This assignment of error is interpreted by this Court as challenging the weight of the evidence supporting the trial court's award of permanent custody. This Court applies the same standard in determining whether both criminal and civil judgments are against the manifest weight of the evidence. Frederick v.Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported. Therefore, this Court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.
Id., quoting State v. Shue (1994), 97 Ohio App.3d 459, 466. Overturning a verdict as against the manifest weight of the evidence is reserved for the exceptional case, where the judgment is "so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice[.]" Hardiman v. ZepMfg. Co. (1984), 14 Ohio App.3d 222, 226, quoting Royer v. Bd. OfEdn. (1977), 51 Ohio App.2d 17, 20.
In cases not involving an abandoned or adopted child, a trial court must find, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody, and that the child cannot or should not be placed with either of the child's parents within a reasonable period of time. R.C. 2151.41.4(B). Clear and convincing evidence is evidence that produces a firm belief or conviction as to the facts sought to be established in the mind of the trier of fact. In re Rankin (Dec. 23, 1998), Summit App. No. 19118, unreported.
 A.
In applying the first prong of the permanent custody analysis, whether permanent custody is in the child's best interest, a trial court, shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.41.4(D).
Appellant contends that there was not clear and convincing evidence before the trial court to determine whether permanent custody is in the children's best interest, and, therefore, the trial court erred in terminating her parental rights with respect to Patrika, Markeddi, and Terrill. In support of her contention, appellant states that "the record is clear that [appellant] remains committed to preserving and fostering the parental bond," that she "displayed `genuine concern for the children' and `appropriate parental caring'" for the children, and that a CSB social worker testified "that `Markeddi really, really wanted to return to her Mother' * * * [and] that [appellant] `took very good care of Markeddi.'" This Court disagrees.
The evidence showed that none of the children have a strong bond with appellant. Both Patrika and Terrill ignored appellant during visitation sessions, showed signs of regression after such visits, and had been excited to return to their respective foster families. On the contrary, both Patrika and Terrill have strong bonds with their foster families.
It is true that when Markeddi was first placed in foster care she often stated that she wanted to return to her mother, and that she had difficulty adjusting to her foster family. Markeddi began individual counseling sessions to aid in the transition, but when she was returned to appellant in March of 1998, appellant failed to take Markeddi to any of her scheduled individual counseling sessions. Then, after appellant was arrested for attacking and seriously injuring her boyfriend, and Markeddi was returned to CSB's custody in May of 1998, Markeddi told a CSB case worker that she "wanted to go to a family that didn't fight and scream," and that appellant and her boyfriend would often drink beer and fight. Since Markeddi was placed with a second foster family she separates easily from appellant after visitations and has bonded well with her foster family.
The record also shows that CSB has been involved with appellant and these three children since 1991, when Patrika's doctor reported concerns that appellant was not giving Patrika her proper seizure medication. CSB and Patrika's doctor went to great lengths to help appellant deal with Patrika's medical condition, providing counseling, transportation, and even home visitation by a nurse. Despite these efforts, appellant failed to provide Patrika with proper medical attention. Since Patrika has been out of appellant's care she has had a marked reduction in her seizures, exhibits a more outgoing personality and a brighter disposition, and her IQ increased by thirty points. Markeddi and Terrill have also shown immense progress developmentally and behaviorally since being taken away from appellant. For example, Markeddi is no longer described as "flat," and Terrill has not experienced problems with his asthma. Furthermore, the guardianad litem strongly recommends that CSB be granted permanent custody of all three children.
Based on all of this evidence, this Court cannot say that the trial court's finding that permanent custody is in all three children's best interest is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.
 B.
In applying the second prong of the permanent custody analysis, whether a child can or should be placed with his parents within a reasonable time, the trial court must find, by clear and convincing evidence, that one or more of sixteen enumerated factors exists. R.C. 2151.41.4(E). In the instant case, the trial court specifically found five factors listed under R.C. 2151.41.4(E):
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *;
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means * * *;
* * *
 (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
Appellant's second assignment of error specifically addresses the second prong of the permanent custody analysis:
 TERMINATION OF PARENTAL RIGHTS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THE PARENTS HAVE SUBSTANTIALLY COMPLIED WITH A COMPREHENSIVE REUNIFICATION PLAN.
Under this assignment of error, appellant argues that she substantially complied with the case plan and therefore, termination of her parental rights is against the manifest weight of the evidence. The trial court concluded that appellant had:
 substantially failed to remed[y] those conditions which prompted the removal of the children from [appellant's] care, due in part to [appellant's] failure to appropriately utilize medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to [appellant] for the purpose of changing parental conduct to allow [appellant] to resume and maintain parental duties[.]
The evidence shows that appellant did not substantially comply with all of the case plan objectives. A number of times appellant tested positive for drugs, despite the plan objective that required appellant to cease using drugs and alcohol. Appellant was ordered to complete counseling to help her with her drug and alcohol addiction, but she did not attend over half of her scheduled sessions. The November 5, 1996 case plan ordered appellant to engage in counseling for depression. However, appellant did not begin to address her problem until July 1998, and even then her participation was sporadic. Appellant did not obtain independent housing that would be safe for the children, and she showed minimal cooperation with CSB workers who attempted to educate her on parenting skills, housing, employment, and money management.
Accordingly, this Court cannot conclude that the lower court's findings that appellant's parental rights be terminated with respect to all three children and that the children be committed to the permanent custody of CSB are so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice. Appellant's second assignment of error is without merit.
 C.
This Court finds that the trial court complied with the requirements of R.C. 2151.41.4. Accordingly, appellant's first and second assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
DONNA J. CARR, FOR THE COURT
BAIRD, P.J., SLABY, J., CONCUR.
[1] Each of the children have different biological fathers, all of whom had their respective parental rights terminated in the December 8, 1998 judgment entry. None of the fathers are parties to this appeal.
[2] The name of each child had been spelled different ways throughout the record: Patricia, Patrika; Markida, Markeddi, Markeda, Markeeda; Terrell, Terrel, and Terrill. CSB filed a motion to correct some of the spellings of the children's names and dates of birth, as appellant provided wrong information about her children. The spellings and dates provided by CSB were obtained from the children's birth certificates and are reflected in this opinion as well as the December 8, 1998 final judgment entry.
[3] Due to appellant's drug abuse during her pregnancies, Patrika suffers from a seizure disorder, and Terrill was born cocaine positive. Terrill also suffers from asthma.
[4] Appellant was required to secure independent housing appropriate for children because she had been living in her mother's home, which was overcrowded, unsafe, and chaotic. At least five other people in addition to appellant and her three children were living in the home.