[Cite as *State v. Lykes*, 2024-Ohio-2364.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

      Plaintiff- Appellee,            :

                                      No. 113260

      v.                              :

DAVID LYKES, JR.,                       :

      Defendant-Appellant.            :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 20, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-663019-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristin M. Karkutt, Assistant Prosecuting Attorney, *for appellee.*

Allison S. Breneman*, for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant David Lykes, Jr., appeals his convictions for murder, felonious assault, and having weapons while under disability. We find that

the state presented sufficient evidence to sustain the verdicts and that those verdicts were not against the manifest weight of the evidence. Further, the trial court did not abuse its discretion when it did not hold a hearing regarding Lykes's competency during trial. Finally, the trial court properly imposed consecutive sentences. The judgment is affirmed.

## PROCEDURAL HISTORY AND RELEVANT FACTS

### Lykes's convictions after trial

{¶ 2} Lykes was found guilty after trial of two counts of murder in violation of R.C. 2903.02(B), with one- and three-year firearm specifications; two counts of felonious assault in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2), with one- and three-year firearm specifications; and one count of having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(3).[1] The findings of guilt stem from the shooting and killing of Daytona Thomas at a home in Garfield Heights, Ohio on August 26, 2021.

### Pretrial proceedings regarding competency

{¶ 3} On October 19, 2021, Lykes's counsel asked for a competency evaluation. The trial court referred Lykes to the Court Psychiatric Clinic for an assessment. On March 7, 2022, Lykes's counsel and the state stipulated to a report from the Court Psychiatric Clinic that Lykes was not competent to stand trial. The trial court referred Lykes to the Northcoast Behavioral Healthcare ("Northcoast")

---

[1] Lykes waived his right to a jury trial and elected to try this charge to the trial court.

for restoration. On March 7, 2023, the parties stipulated to a report from Northcoast that Lykes was restored to competency and able to stand trial.[2]

**Evidence presented at trial**

{¶ 4} On August 26, 2021, at around 1:00 p.m., Tonay Thomas drove her mother, Daytona Thomas, and Lykes to Daytona's home in Garfield Heights, Ohio. Tonay testified that Lykes was carrying a firearm. A next-door neighbor testified that on that afternoon, she heard five gunshots. Garfield Heights Police Officer Zoltan Kovesdi testified he was advised by dispatch that a male caller said he shot someone and that the call came from an area north of Daytona's home. Officers toured the area where the call came from, and Officer Kovesdi stated he was flagged down by two people and directed to Daytona's home. He entered and found Daytona's other daughter, Tatiana Thomas, yelling for help. Kovesdi checked Daytona's body and found no pulse. After an autopsy, the coroner concluded that Daytona was shot four times and that two of the shots were fatal.

{¶ 5} At the time of the shooting, Lykes was on probation with the Cleveland Municipal Court and subject to GPS monitoring. GPS tracking placed Lykes at the house at the time of the shooting. Lykes turned himself in to the Cleveland Police Department later that day and said he shot someone. He surrendered a firearm, which later forensic testing established that it was used to

---

[2] The trial court then referred Lykes for an assessment as to his sanity at the time of the offense. On May 30, 2023, the parties stipulated to a report finding Lykes was capable of understanding right from wrong at the time of the offense.

kill Daytona. Further testing showed the presence of Lykes's DNA on the trigger of the firearm.

{¶ 6} Lykes testified in his own defense. He said both he and Daytona sold drugs and that he would never leave his house without a gun. He explained that on the day Daytona was killed, Tonay dropped them off at the house. He said he went upstairs. At some point, Daytona sent him downstairs where he saw a red truck with people that Daytona knew. When he went back upstairs, he said Daytona was on the floor and that he called the police. Lykes denied hearing gunshots and described being intoxicated and on drugs. He stated that nothing seemed real, that he was confused, and that he did not remember what happened. Lykes denied confessing to shooting and killing Daytona, but on cross-examination, the state introduced statements made to, and recorded by, Cleveland Police officers that Lykes said he killed someone.

**Lykes's actions during trial**

{¶ 7} During voir dire, Lykes interrupted the proceedings and asked the trial court for new counsel. He told the court his attorneys did not tell him anything. After the court discussed the role of counsel, Lykes informed the trial court that he "didn't want to go trial" because he wanted "flat time like they told me I was getting." The trial court explained that the prosecutor would have to agree to a definite sentence for that to happen. The prosecutor stated that she would not agree to a plea bargain that included a definite sentence. After the parties rested and were reviewing jury instructions with the trial court, Lykes interrupted and explained to

the trial court that he was confused during his testimony and that he did not tell the jury about the extent of his intoxication on the day of the shooting.

## Sentencing

{¶ 8} At the sentencing hearing, the trial court heard argument as to whether the crimes for which Lykes was convicted were allied offenses of similar import. The state asserted that the murder and felonious assault counts were allied offenses, but noted that the firearm specifications on each of those counts were subject to separate sentencing. The trial court found the counts merged, and the state elected to have the trial court sentence Lykes on the murder charge.

{¶ 9} After hearing statements from the state, victim's representatives, Lykes, Lykes's counsel, and a member of his family, the trial court imposed sentence. On the murder count, the trial court sentenced Lykes to a three-year term of imprisonment on the firearm specification, ordering it to be served prior to and consecutively to a sentence of life imprisonment with the possibility of parole after 15 years. The trial court then imposed two three-year terms of incarceration on each of the three-year firearm specifications on the felonious assault counts. It ordered those sentences to be served consecutively to the other sentences. As to the having weapons while under disability count, the trial court imposed a 36-month term of imprisonment and ordered that sentence to be served consecutively to all other sentences imposed.

{¶ 10} In ordering the weapons while under disability count to be served consecutively, the trial court found that consecutive sentences were necessary to

protect the public from future crime, were necessary to punish the offender, were not disproportionate to the seriousness of the offender's conduct, and were not disproportionate to the danger the offender poses to the public.[3]   In making consecutive-sentencing findings, the trial court stated that

> the testimony revealed that everywhere [Lykes] went he carried a gun, for no reason whatsoever, even to come down to the Justice Center to make some kind of an adjustment on his sentence. He carries a gun, exposes it to people. And the court finds that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
>
> The Court does take into consideration the expressions of the victims in this case, who expressed that they are concerned about the fact that he has such a pattern of conduct in the past and that they are all concerned that this is behavior that would be repeated in the future. And they'd ask that this Court to take into consideration that it not occur to anyone else.

{¶ 11} In total, the trial court imposed an aggregate sentence of life in prison with the possibility of parole after serving 27 years.

## LAW AND ARGUMENT

### The trial court did not abuse its discretion regarding Lykes's competency to stand trial

{¶ 12}   Lykes raises four assignments of error, which we address out of the order presented.  The third assignment of error reads:

---

[3] The trial court memorialized these findings in a journal entry.

3.    The trial court erred by not ceasing trial to re-refer defendant for competency

{¶ 13}  Prior to trial, Lykes was found incompetent to stand trial, was placed at Northcoast, and was restored to competency.  In his third assignment of error, Lykes argues the trial court should have held a hearing on his competence during trial because he exhibited a lack of understanding of the proceedings.  He cites to his interruption of voir dire, his reasons for asking for new counsel, and the manner of his testimony.  The state argues that these instances of Lykes's behavior are not indicia of incompetency that warranted a hearing.

{¶ 14}  A defendant is not competent to stand trial if "because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense." R.C. 2945.37(B). After trial has begun, if the issue of a criminal defendant's competence is raised, then the court "shall hold a hearing on the issue for good cause shown."  *Id.*  The right to a hearing accrues where there are sufficient indicia of incompetence mandating an inquiry into the defendant's competence in order to ensure the defendant receives a fair trial.  *State v. Ahmed*, 2004-Ohio-4190.  The decision on whether to hold a hearing is within the trial court's discretion.  *Id.*

{¶ 15}  During voir dire, Lykes asked for new counsel and informed the trial court that he wanted a definite sentence. The trial court explained that the prosecutor would have to agree to a definite sentence.  It is evident from the transcript that Lykes was frustrated by counsel's inability to negotiate a plea bargain

to his satisfaction.  Such frustration does not indicate Lykes was incapable of understanding  the proceedings; to the contrary, it shows he was aware of the effect of the proceedings and sought to minimize his potential punishment if convicted after trial.

{¶ 16} Lykes elected to testify in his defense.  He argues that because of the manner in which he testified, the trial court should have recognized his confusion and fragmented answers as indicia of incompetency.  Further, he notes that he told the court he was confused and did not know what was going on at the conclusion of trial.  Lykes's testimony reveals that he was able to answer questions and communicate answers to the jury in a manner that was intelligible.  As such, our review of his testimony does not reveal indicia of incompetence indicating he was incapable of understanding the proceedings or incapable of assisting in his defense.  Accordingly, we cannot say the trial court abused its discretion by failing to hold a hearing on Lykes's competency after trial began.

{¶ 17}  The third assignment of error is overruled.

## The verdicts were based on sufficient evidence and not against the manifest weight of the evidence

{¶ 18}  The second and first assignments of error read:

2.  The evidence was not legally sufficient to sustain a guilty verdict.

1.  The jury found, against the manifest weight of the evidence, that the appellant committed the acts alleged in the indictment.

{¶ 19} Lykes argues that the evidence was insufficient to sustain guilty verdicts on the murder and felonious assault counts, asserting there was no evidence he purposely harmed Daytona Thomas. As to his manifest weight of the evidence claim, he argues that there were no eyewitnesses to the murder and further notes that Daytona's children testified that Lykes and Thomas never argued and Lykes cared a lot about Daytona. The state argues there was sufficient evidence to support the convictions and the evidence was more than persuasive to justify the verdicts.

{¶ 20} We review challenges to the sufficiency of evidence to determine whether the evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* When reviewing the evidence, we are mindful that circumstantial and direct evidence "possess the same probative value." *Id.* at 272. Our review of the evidence is not to determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997).

{¶ 21} A manifest weight challenge to a conviction asserts that the state has not met its burden of persuasion in obtaining the conviction. *Thompkins* at 390. Such challenge raises factual issues, and our review is as follows:

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "Sitting as the 'thirteenth juror,' the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion." *State v. Jordan*, 2023-Ohio-3800, ¶ 17.

{¶ 22} Lykes argues the state did not have direct evidence he had formed the intent necessary to be convicted of murder or felonious assault. However, "[t]he jury is permitted to infer purpose from the circumstantial evidence." *State v. Winston*, 2003-Ohio-653, ¶ 23 (8th Dist.), citing *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist. 1994).

> Circumstantial evidence of an intent to kill "may be presumed where the natural and probable consequence of a wrongful act is to produce death, and such intent may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound."

*Id.*, quoting *State v. Robinson*, 161 Ohio St. 213 (1954), paragraph five of the syllabus.

{¶ 23} At trial, the state presented evidence that Daytona was shot four times, two of those shots being fatal. Daytona's daughter, Lykes himself, and GPS monitoring placed Lykes in the home at the time of the shooting. Further, Lykes

possessed the firearm that fired the fatal shots and that firearm had his DNA on the trigger. Finally, Lykes admitted to police that he had shot someone. The evidence presented was sufficient to allow an inference Lykes had purposely caused Daytona's death as to the murder charge and that he both knowingly caused her serious physical harm and knowingly caused her serious physical harm by means of a deadly weapon. *See State v. Allen*, 2005-Ohio-4813, ¶ 19 (8th Dist.) ("When someone shoots a person with a gun, he is aware that his conduct will probably cause a certain result, in this case, serious physical harm.").

{¶ 24} In arguing his convictions were against the manifest weight of the evidence, Lykes notes there was no direct evidence he intended Daytona harm, there were no eyewitnesses to the shooting, and Daytona's children testified that Lykes never argued and cared for Daytona. As to whether he intended to do harm and the victim's children testimony could negate a motive, "proof of motive does not establish guilt, nor does want of proof thereof establish innocence; and, where the guilt of the accused is shown beyond a reasonable doubt, it is immaterial what the motive may have been for the crime, or whether any motive is shown." *State v. Allen*, 2005-Ohio-4813, ¶ 15 (8th Dist.), citing *State v. Lancaster*, 167 Ohio St. 391 (1958), paragraph two of the syllabus.

{¶ 25} Having reviewed the entire record, we cannot say Lykes's convictions are against the manifest weight of the evidence or his case is the exceptional one in which a manifest injustice occurred.

{¶ 26} The first and second assignments of error are overruled.

## The trial court properly imposed consecutive sentences

{¶ 27} The fourth assignment of error reads

4. The trial court erred by imposing consecutive sentences.

{¶ 28} Lykes argues that the sentence was disproportionate to his crimes and argues the aggregate sentence he received for the maximum consecutive terms on the gun specifications was not justified. The state argues that the sentence was properly imposed and not disproportionate to the crimes committed.

{¶ 29} Lykes does not argue that the trial court failed to make the necessary findings pursuant to R.C. 2929.14(C)(4) in imposing consecutive sentences, but focuses his argument on the fact the trial court imposed more than one three-year sentence on the firearm specifications creating a sentence that was disproportionate to the aggregate sentence imposed.

{¶ 30} Lykes was found guilty of two counts of both murder and felonious assault and four three-year firearm specifications. As such, the trial court was required to impose sentence for two of the firearm specifications pursuant to R.C. 2929.14(B)(1)(g). *State v. Bollar*, 2022-Ohio-4370. Further, the trial court had discretion to impose sentence on "any or all of the remaining specifications." *Id.*

{¶ 31} Where the trial court makes the appropriate findings to impose consecutive sentences, "our review of the record is limited to determine whether the record clearly and convincingly does not support the imposition of consecutive sentences." *State v. Hoffman*, 2023-Ohio-3977, ¶ 35 (8th Dist.), citing R.C. 2953.08(G). The trial court sentenced Lykes to the statutory prison sentence

for the murder and to three of the four three-year firearm specifications of which he was found guilty. If further ordered the sentence imposed for having weapons while under disability to be served consecutively. In so doing, the trial court noted Lykes's criminal history, his propensity to carry a gun at all times, and the danger he posed in the future. As to the consecutive sentences for murder and having weapons while under disability, we cannot say the record does not clearly and convincingly support the imposition of consecutive sentences. Further, we do not find the trial court abused its discretion in imposing sentence on a third three-year firearm specification.

{¶ 32} The fourth assignment of error is overruled.

**CONCLUSION**

{¶ 33} We affirm Lykes's convictions for murder and having weapons while under disability. At trial, although Lykes interrupted the proceedings and testified, his actions did not amount to signs that he was incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense. Accordingly, his actions did not necessitate a hearing on his competency. Lykes's convictions were based on sufficient evidence and were not against the manifest weight of the evidence where the victim was shot four times, Lykes was in the home at the time of the shooting, he possessed the firearm used in the murder, and he admitted to police that he had shot someone. We do not find that the record does not clearly and convincingly support the imposition of consecutive sentences

for murder and having weapons while under disability, and the trial court did not abuse its discretion in imposing three, three-year firearm specifications.

{¶ 34} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

EILEEN A. GALLAGHER, P.J., and
MARY EILEEN KILBANE, J., CONCUR