OPINION
Appellant Jeffrey J. Hoke appeals a judgment of the Knox County Common Pleas Court convicting him of murder. (R.C. 2903.02):
ASSIGNMENTS OF ERROR
FIRST ASSIGNMENT OF ERROR
 THE VERDICT WAS NOT SUSTAINED BY SUFFICIENT EVIDENCE WHERE THE TESTIMONY AT TRIAL FAILED TO SHOW THAT DEFENDANT-APPELLANT HAD THE SPECIFIC INTENTION TO CAUSE THE DEATH OF ANOTHER.
SECOND ASSIGNMENT OF ERROR
 A VERDICT OF MURDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THE TESTIMONY AT TRIAL FAILED TO SHOW THAT DEFENDANT-APPELLANT HAD THE SPECIFIC INTENTION TO CAUSE THE DEATH OF ANOTHER.
THIRD ASSIGNMENT OF ERROR
 DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.
Appellant and Jennifer Hoke were married in July of 1996. At the time of the marriage, Jennifer was 16 years old, and appellant was 35 years old. The marriage was appellant's third. Appellant had a daughter from each marriage. Appellant had custody of his daughter from his first marriage. His second wife left the state, taking their daughter with him, and he had no further contact with that daughter. Appellant and Jennifer had a daughter named Brookelyn, born in August of 1997. In January of 1999, appellant and Jennifer separated. Brookelyn lived with Jennifer. Appellant and Jennifer had numerous disputes concerning appellant's visitation with Brookelyn. On Wednesday, May 5, 1999, Jennifer and Brookelyn went to the home of Laura Bender, Jennifer's aunt. Laura was attending a two-day class in Columbus on Thursday and Friday, and Jennifer was staying at the home with Laura's three daughters. After taking the girls to school on Thursday morning, Laura left for Columbus. On Thursday after school, the Bender girls played outside, and then went to Taco Bell with Jennifer for dinner. After dinner, they went to the grocery store. Appellant appeared at the store, and told Jennifer to meet him back at the house. Appellant wanted to take Brookelyn for the weekend. Jennifer wanted Brookelyn on Sunday, as it was Mother's Day. Finally, appellant and Jennifer agreed that appellant would pick up Brookelyn on Friday morning, and keep her Friday and Saturday. The next day when appellant appeared at the home, a dispute apparently erupted between appellant and Jennifer. Appellant stabbed Jennifer 32 times, causing her death. He hid the body under a pile of coats, and left the residence. Renna Rose, a friend of appellant and his mother, met appellant while shopping at the Meyer's Grocery Store. Appellant put Brookelyn in Renna's shopping cart, and told him to watch the baby while appellant looked for his mother. Appellant never came back. Eventually Renna found appellant's mother, and gave Brookelyn to her. Appellant began driving around. He called a co-worker, and told him that he had killed his wife. He gave the co-worker a list of telephone numbers, and asked him to call the sheriff's department and the Channel 10 news. He also gave the co-worker the address where the body was located. Appellant telephoned another co-worker, and told him he could keep items which appellant stored in the co-worker's garage. Appellant stated that he had killed his wife, and would not need any of the items. Several times during the afternoon, appellant called his boss, stating that he was driving around. Appellant also called his sister, Susan Culbertson. He told his sister that he had stabbed Jennifer 31 times and killed her. He also told Susan that he tried to kill himself, but the rope broke twice. A later search of a shed at appellant's mother's house revealed two pieces of a jump rope laying on the floor, the remainder of the jump rope hanging from the rafters, and three plastic tie stripes hanging from the rafters. Gas tanks with the lids off were arranged in a circle under the rafters. Laura Bender returned home at approximately 1:00 p.m. on Friday. The telephone was ringing as she entered the house, but when she picked it, no one was on the line. She then checked her voice mail at work, and returned a business call. While she was on the telephone, two sheriffs' deputies arrived at the door. They asked her if Jennifer Hoke was in the house. They then searched the home, finding Jennifer's body under a beige coat. Jennifer's body was examined by the coroner. The coroner determined that the cause of death was 7 stab wounds to the chest, which hit vital organs; two stab wounds in the neck, which hit vital organs; and one stab wound in the stomach, which hit a vital organ. He stated that the stab wounds caused blood and air to leak into her chest, causing her lungs to collapse, and ultimately causing her death. The coroner found 32 stab wounds on Jennifer's body. Appellant was indicted by the Knox County Grand Jury with one count of murder in violation of R.C. 2903.02 (A). The case proceed to jury trial in the Knox County Common Pleas Court. At trial, appellant did not dispute the fact that he killed Jennifer. However, appellant argued that he was guilty only of voluntary manslaughter, as he did not intend to kill Jennifer. Appellant presented the testimony of Bruce Goldsmith, a psychologist who examined appellant. Dr. Goldsmith testified that appellant and Jennifer broke up shortly after their marriage. However, when they learned that Jennifer was pregnant, the couple got back together. He testified that appellant told him they began having problems in August of 1998. Appellant told Dr. Goldsmith that he believed Jennifer was smoking marijuana, he caught her in bed with another woman, they were having severe financial problems, and he learned she was having an extra-marital affair with a man. Appellant told Goldsmith that Jennifer started divorce proceedings in January of 1999. He claimed that Jennifer and Brookelyn moved out in March of 1999, and she repeatedly refused his efforts to see Brookelyn. He told Dr. Goldsmith he felt harassed, as Jennifer would tell him to meet her and Brookelyn at a particular location, but would not appear. He told Dr. Goldsmith that after he put the car seat in the car on Friday, May 7, Jennifer told him that he could not take Brookelyn. He told Dr. Goldsmith that Jennifer hit him in the face, and came at him with a knife or a letter opener. He stated that he turned the weapon on her, but remembered stabbing her only one time in the stomach. Dr. Goldsmith concluded that appellant was repeatedly frustrated over his attempts at visitation with Brookelyn, and his frustration was exacerbated by having lost the child from his second marriage. Dr. Goldsmith testified that a "rage reaction" caused appellant to lose control and kill Jennifer. The jury convicted appellant of murder as charged in the indictment. He was sentenced to a term of incarceration of 15 years to life.
 I
Appellant argues that there was insufficient evidence to demonstrate that he specifically intended to cause the death of Jennifer. R.C. 2903.02 (A), which defines the crime of murder, provides that, "no person shall purposely cause the death of another." R.C. 2901.22 (A) provides that a person acts purposely when it his specific intention to cause a certain result. Sufficiency of the evidence is a term of art, meaning the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380,386. Sufficiency is a test of adequacy. Id. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. Purpose or intent can be established by circumstantial evidence. State v. Nicely (1988), 39 Ohio St.3d 147. The element of purpose required by R.C. 2903.02 may be presumed where the natural and probable consequences of a wrongful act are to produce death. State v. Shue (1994), 97 Ohio App.3d 459, 466, citing State v. Robinson (1954), 161 Ohio St. 213, paragraph 5 of the syllabus. Intent may be inferred from all the surrounding circumstances, such as the instrument used to produce death and the manner of inflicting the fatal wound. Id. The record reflects that appellant stabbed Jennifer 32 times. The coroner testified that seven stab wounds to the chest, two stab wounds to the back, and one stab wound to the stomach hit vital organs. Intent to kill Jennifer may be inferred from the use of a knife to stab her 32 times, including ten wounds which struck vital organs. In addition, appellant telephoned his sister shortly after killing Jennifer, and told her that he stabbed Jennifer 31 times. From this evidence, the jury could conclude that appellant acted purposely, as his specific intention was to cause Jennifer's death. The first assignment of error is overruled.
 II
Appellant argues that the judgment is against the manifest weight of the evidence, as he did not specifically intend to cause Jennifer's death. In considering a claim that a judgment is against the weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether when resolving conflicts in the evidence, the jury clearly lost its way. Thompkins, supra, at 387. The discretionary power to grant a new trial shall be exercised only in the exceptional case when the evidence weighs heavily against conviction. Id. The judgment is not against the manifest weight of the evidence. As discussed above, intent may be inferred from the surrounding circumstances, such as the instrument used to produce death, and the manner of inflicting the wound. Shue, supra, at 466. Although Dr. Goldsmith testified that he believed appellant suffered a "rage reaction" in which he lost control, causing Jennifer's death, the jury could conclude from the evidence that he inflicted 32 stab wounds, and recalled inflicting 31 stab wounds, that he intended to cause Jennifer's death. The second assignment of error is overruled.
 III
Appellant argues that trial counsel was ineffective for failing to object or move for a mistrial after the court noted that some courtroom observers were wearing items adorned with Jennifer's picture. Appellant also argued that counsel was ineffective for preventing him from testifying at trial. Counsel is not ineffective unless his performance fell below an objective standard of reasonable representation, and appellant was prejudiced by such performance. Strickland v. Washington (1984),466 U.S. 668; State v. Bradley (1989), 42 Ohio St.3d 136, cert denied, 497 U.S. 1011. To show prejudice, the defendant must show that if counsel had not erred, there is a reasonable probability that the outcome of the proceeding would have been different. Id. During a recess, and after the jury left the courtroom, the prosecutor raised concerns about bystanders discussing the case in the courthouse, where the jury could potentially hear the conversation. The court then stated: THE COURT: Now, I want to see what they're wearing. I assume that's Jennifer and — I'm going to ask you not to wear those in the courthouse. I understand the sentiment behind it, but that's something the Jury does not need to see. It's not evidence and I don't want the Jury to be influenced. Put those away until you get outside. Thanks, folks. MR. TYACK: Your Honor, the Court took care of the thing I was concerned about.
Tr. 148-49. It is apparent from the record that Mr. Tyack, counsel for appellant, was satisfied with the court's manner of handling the issue. Appellant has not demonstrated that counsel's performance fell below an objective standard of reasonable representation by failing to object or move for a mistrial. Further, appellant has not demonstrated that the result of the proceeding would have been different had counsel acted differently. The remainder of the record does not demonstrate any further concerns with observers wearing items with Jennifer's picture. Appellant also argues that counsel was ineffective by preventing him from testifying. The record before this court on direct appeal does not demonstrate that appellant was prevented from testifying by counsel. As appellant's claim depends on information outside the record on appeal, the claim must be raised through a petition for post-conviction relief filed pursuant to R.C. 2953.21. State v. Cooperrider (1983), 4 Ohio St.3d 226. The third assignment of error is overruled.
The judgment of the Knox County Common Pleas Court is affirmed.
 ___________________________ Gwin, P.J.,
By Gwin, P.J., Hoffman, J., and Reader V.J., concur