JOURNAL ENTRY AND OPINION
Carlos Santiago appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of grand theft of a motor vehicle, attempted murder, and improper discharge of a firearm into a habitation. On appeal, he raises five assignments of error for our consideration. After a careful review of the record and applicable law, we reject his contentions and affirm the judgment of the trial court.
The facts of the case reveal that Carlos Santiago traded his Honda Civic for Eduardo Castro's Volkswagen. Santiago subsequently changed his mind and demanded to undo the car trade, which Castro refused to do. Santiago then came to Castro's house repeatedly, demanding his Civic be returned to him, and threatened Castro that he would suffer the consequences if he did not return Santiago's Honda. On the evening of September 24, 1999, Castro and his mother saw Santiago taking the Honda Civic from the driveway of Castro's home. The next day, Santiago, Jesus Colon, and some other males, slowly drove a Toyota past Castro's house seven or eight times, taunting Castro and laughing.
Sometime before midnight on September 25, 1999, Cleveland Police Patrolman Kevin Fairchild arrived at Castro's home in connection with an investigation of the stolen Honda. At that time, he learned about the Toyota which had been driving up and down the street that day. Describing the occupants of the vehicle, Castro identified Carlos Santiago as the driver. He also stated that there were three other males in the car and that the front seat passenger may have been Jesus Colon. Fairchild then completed his report and instructed Castro to get a license plate number and inform the police if the Toyota returned.
Around this time, Castro's sister and two of her friends saw Santiago and several other males in a Toyota at the corner gas station near Castro's house. She then drove home and Castro went outside to talk to her and her friends. Minutes later, the same Toyota driven by Castro came down the street and pulled up near Castro's house. Gunshots then came from the front passenger side of the car. One bullet struck Castro in the leg, other bullets hit his car, his house and his neighbor's house.
Fairchild received the report of this drive-by shooting and immediately returned to Castro's house where he found Castro hopping around on his porch, shouting, They shot me. He also stated, Santiago was driving the car and Jesus Colon shot me.
On September 27, Castro gave Cleveland Police Detective David Santiago a written statement identifying Carlos Santiago as the driver of the Toyota and Colon as the one who fired the shots. In the statement, Castro also explained that Santiago came with Colon to shoot him because Santiago was angry with him for his refusal to return the Civic and for his having witnessed Santiago taking the car from his driveway. According to Detective Santiago, Castro expressed concerns about further retaliation and physical harm from Santiago and Colon, requesting that the police arrest these two individuals. Castro in fact drove with Detective Santiago to assist in locating addresses for both Colon and Carlos Santiago.
Subsequently, a grand jury indicted Santiago in one case for grand theft of a motor vehicle, and later, in a separate case indicted both Santiago and Colon for attempted murder and unlawful discharge of a firearm into a habitation, the latter two counts accompanied by gun specifications.
Prior to trial, the state made a motion to consolidate for trial the auto theft case and the case against Colon and Santiago for attempted murder and improper discharge of a firearm. Santiago opposed joinder, arguing that the two cases were unrelated and that joinder would violate Evid.R. 404(B). The court denied the objection, granted the request, and consolidated the two cases for trial.
In addition, because the prosecutor had learned that Castro had become uncertain about his identification of Colon as the shooter, he requested the trial court to call Castro as its witness to enable the state to cross-examine him regarding Colon's involvement in the shooting, based on his earlier identifications of Colon. The court granted the state's request to call Castro as the court's witness.
On May 9, 2000, the court began a joint jury trial of Colon and Santiago. Carman Castro, Castro's sister, and two other witnesses testified that they saw Santiago in the gray car at the gas station near the house minutes before the shooting. Castro, as the court's witness, testified that Santiago drove the car where the gunshots came from.
Detective Santiago testified that several days after the shooting, Castro identified Carlos Santiago as the driver of the car during the shooting. He also testified that Castro expressed his concerns that his parents were not sleeping through the night because of their worries that the shooters would return for further retaliation.
Following the trial, the jury returned a verdict finding Santiago guilty of grand theft of a motor vehicle, attempted murder and improperly discharging a firearm into a habitation. The court subsequently sentenced Santiago to a term of fourteen years for his participation in these offenses.
Santiago now appeals. His first assignment of error states:
 I. THE TRIAL COURT ERRED BY GRANTING THE STATE'S MOTION FOR JOINDER OF THE APPELLANT'S CASES.
Santiago alleges that the trial court erred in granting the state's motion for consolidating the case of auto theft and the case of attempted murder, arguing that the two cases are separate and distinct and that the joinder resulted in unfair prejudice to him. The state urges that the joinder had been proper because the theft offense would have been admissible under Evid.R. 404(B) and further because the two offenses are part of a common scheme or part of a course of criminal conduct under Crim.R. 8(A).
Crim.R. 8(A) provides:
 (A) Joinder of Offenses. Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of conduct.
Crim.R. 13 provides:
 The court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information. * * *
Thus, pursuant to Crim.R. 8(A) and Crim.R. 13, two or more offenses can be tried together if the offenses are of the same character, based on connected transactions, or are part of a course of conduct. The court in State v. Lott (1990), 51 Ohio St.3d 160, 163 further explained:
 The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged "are of the same or similar character." (Citation omitted.) While joinder is a viable trial procedure, an accused may move to sever under Crim.R. 14 upon a showing of prejudice. For an appellate court to reverse a trial court ruling denying severance, the defendant must demonstrate that the trial court abused its discretion.
* * *
 A prosecutor can use two methods to negate such claims of prejudice. Under the first method, the "other acts" test, the state argues that it could have introduced evidence of the [other crime] under the "other acts" portion of Evid.R. 404(B), if the [two crimes] had been severed for trial. (Citation omitted.) Under the second method, the "joinder" test, the state is not required to meet the stricter "other acts" admissibility test, but is merely required to show that evidence of each crime joined at trial is simple and direct. (Citation omitted.) (Emphasis added.)
Here, we consider first if the joinder is proper under Crim.R. 8(A) and Crim.R. 13. The record indicates that, after issuing several threats, Santiago took the car from Castro's driveway and drove past Castro's house the next day almost by the hour taunting Castro, and finally shots came from his car moments past midnight that day. Applying Crim.R. 8(A), we therefore conclude that the joinder is proper, because the two criminal acts constitute parts of a common scheme or are part of a course of conduct.
We next consider if the joinder prejudiced Santiago. Here, upon review, we have concluded that the state satisfactorily negated the prejudice under both methods set forth in Lott: the state's evidence in connection with the car theft, including Santiago's threats to the victim and his anger at the victim's witnessing him taking the car, would have been admissible under Evid.R. 404(B) as relevant to establish a motive for the attempted murder; furthermore, the evidence for theft and attempted murder is simple and direct, that is, a trier of facts would be capable of segregating the proof required for each offense. See State. v. Mills (1992), 62 Ohio St.3d 357, 362.
Because the joinder is proper pursuant to Crim.R. 8(A), and because no prejudice existed under either the other acts test or the joinder test, we conclude that Santiago failed to demonstrate that the trial court abused its discretion in granting the state's motion for joinder of these two cases against Santiago. This assignment of error is overruled.
 II. THE EVIDENCE IS CONSTITUTIONALLY INSUFFICIENT TO SUSTAIN A CONVICTION OF ATTEMPTED MURDER IN VIOLATION OF R.C. S2903.02.
Santiago argues that the evidence establishes that he randomly fired shots only for intimidating or menacing purposes, which is not sufficient to prove that he had a specific intent to kill Castro, required for a conviction of attempted murder. The state contends that Santiago's prior threat to Castro that he would suffer the consequences, coupled with several witnesses' identification of Santiago as the driver of the car from which shots were fired, constitute sufficient evidence for his conviction of attempted murder.
The issue for our review then concerns whether the state presented sufficient evidence to prove that Santiago had the requisite intent for attempted murder.
In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, syllabus. The reviewing court will not disturb a verdict unless it determines that reasonable minds could not have reached the conclusion reached by the trier of fact. Jenks,61 Ohio St.3d at 273.
R.C. 2903.02 defines murder as to purposely cause the death of another. The culpable mental state of purposely is defined in R.C.2901.22 as follows:
 (A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
Furthermore, the element of purpose required by R.C. 2903.02 may be presumed where the natural and probable consequences of a wrongful act are to produce death. State v. Shue (1994), 97 Ohio App.3d 459, 466, citing State v. Robinson (1954), 161 Ohio St. 213, paragraph five of the syllabus. A specific intent to kill may reasonably be inferred from the fact that a firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death. State v. Widner (1982),69 Ohio St.2d 267, 270.
Here, the state produced evidence that after Santiago issued threats that Castro would suffer the consequences, he drove a car slowly past Castro's house and the car's front passenger fired shots at Castro as he stood outside his house talking to several people, with shots also hitting Castro's car and the wall of his house. Since the natural and probable consequences of multiple shots at a person and his surroundings is to produce death, the element of purpose R.C. 2903.02 requires may be inferred in this case. Shue, supra. Furthermore, a trier of fact may reasonably infer intent or purpose from the fact that a firearm is an inherently dangerous instrumentality and its use is reasonably likely to produce death. See, also, Widner, supra (finding a specific intent to commit murder may be inferred from a passenger's firing a gun at an individual from a moving vehicle); State v. Brown (Feb. 29, 1996), Cuyahoga App. No. 68761, unreported (the act of pointing a firearm and pointing it in the direction of anther human being is an act with death as a natural and probable consequence.)
Accordingly, examining the evidence most favorably to the state, we conclude that the state presented evidence at trial sufficient to support a finding by any rational trier of fact that Santiago committed attempted murder. This assignment of error is overruled.
The third assignment of error states:
 III. THE TRIAL COURT ERRED BY ALLOWING THE JURY TO CONSIDER IMPROPER HEARSAY IN THEIR DELIBERATIONS.
Carlos Santiago contends that Detective Santiago testified, in violation of the hearsay rule and prohibition against victim impact evidence, that Castro told him that his parents were not sleeping during the night because of their worry of possible further retaliation. The state counters that the evidence, although hearsay, is harmless error. The issue then is whether the trial court erred in admitting Detective Santiago's statement referring to the concerns of Castro's parents.
Evid. R. 801(C) defines hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Here, Detective Santiago testified that Castro wanted the two suspects arrested because his parents were worried about their return. We do not see a hearsay problem here. Detective Santiago's testimony related Castro's observation that his parents had difficulties sleeping due to their worry of further repercussions; no out-of-court statements by his parents had been offered by the state. Furthermore, Castro's statement, that his parents worried about the suspects' return and had problems sleeping, was not offered to prove the truth of the matter asserted; rather, the state offered it to explain why Castro requested the suspects' arrest and to explain why Castro assisted Detective Santiago in locating them. Finally, because the state offered this evidence to demonstrate the level of certainty in Castro's identification of Colon and Santiago, we do not agree with the assertion that this testimony is victim impact evidence with no probative value. Consequently, we conclude that the trial court properly admitted the evidence and overrule this assignment of error.
Santiago's fourth assignment of error states:
 IV. ERRONEOUS JURY INSTRUCTIONS DEPRIVED THE APPELLANT HIS RIGHT TO A FAIR TRIAL.
Santiago contends that the court erred in the following two jury instructions, which he claims reduced the culpable mental state required to prove attempted murder:
 The Defendant's responsibility is not limited to the immediate or most obvious result of the Defendant's act or failure to act. The Defendant is also responsible for the natural and foreseeable consequences or resultsthat follow, in the ordinary course of events, from the act or failure to act. (Tr. 723.) (Emphasis added.)
 Now conduct. When the central idea or essence or gist of the offense is a prohibition against or forbidding of conduct of a certain nature, a person acts purposely if his specific intention was to engage in conduct of that nature, regardless of what he may have intended to accomplish by his conduct. (Tr. 720.)
The issue for our review then concerns whether these jury instructions erroneously reduced the element of intent required for conviction.
After reviewing the challenged instructions and the applicable law, we note that the instruction on natural and foreseeable consequences or results is similar to the natural and probable consequences required by Ohio courts to prove purpose or intent for murder. Shue, supra. We note, furthermore, that the second challenged instruction adopts verbatim language from R.C. 2901.22(A), cited above, which defines the culpable mental state of purposely.
Consequently, the record reflects that the trial court's instruction on intent is in accordance with law, and we overrule this assignment of error.
Santiago's fifth assignment of error states:
 V. THE FAILURE OF DEFENSE COUNSEL TO REQUEST A SEPARATE TRIAL FROM THE CO-DEFENDANT, REQUEST AN INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF FELONIOUS ASSAULT, IN ADDITION TO COUNSEL FAILURE TO OBJECT TO ERRONEOUS JURY INSTRUCTIONS DENIED THE APPELLANT HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
Santiago argues that his trial counsel was ineffective because he failed to request a separate trial from Colon, claiming that if he had received a separate trial, Castro's prior statement to Detective Santiago identifying him and offering a motive for the shooting would not have been admissible in that trial. He also alleges ineffective assistance because trial counsel did not request a jury instruction for the lesser included offense of felonious assault and further did not object to allegedly erroneous jury instructions on the intent element. The state maintains that these matters involve strategies within the discretion of the trial counsel. The issue for our review is whether Santiago was deprived of his right to effective assistance of counsel.
To sustain a position that his counsel was ineffective, Santiago must demonstrate both deficient performance and that, but for such conduct, the outcome of the trial would have been different. See Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136. Moreover, strategic or tactical decisions made by defense counsel which are well within the range of professionally reasonable judgment need not be analyzed by a reviewing court. Strickland, supra.
With regard to the alleged failure to request a separate trial from Colon, which Santiago claims results in his being prejudiced by Castro's prior statement, the record shows that while Santiago did not testify, his co-defendant, Colon, took the stand and denied any involvement in the shooting. Santiago's trial counsel could have reasonably believed that Colon's testimony would benefit his client. Thus, the tactical decision to consent to a joint trial is within the range of professionally reasonable judgment. Accordingly, we do not perceive deficient performance in the trial counsel's failure to request a separate trial.
As to the alleged failure to object to the jury instructions on the intent element, because we have concluded that the trial court did not err in this connection, we likewise do not perceive any deficient performance by the trial counsel.
Finally, Santiago claims that his trial counsel rendered ineffective assistance of counsel by not requesting an instruction on the lesser included offense of felonious assault. The record indicates that this decision is likely necessitated by the defense strategy of portraying Santiago's innocence of the offenses charged by showing misidentification of Santiago by Castro. The request for an instruction on a lesser included offense would therefore be inconsistent with Santiago's claim of mistaken identity. Because the decision not to request the instruction on felonious assault is a tactical one within the range of professionally reasonable judgment, we need not review it. Accordingly, we overrule this assignment of error.
On the basis of the foregoing, we reject Santiago's contention and affirm his conviction.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that a special mandate issue out os this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, A.J. and COLLEEN CONWAY COONEY, J. CONCUR.