OPINION *Page 2 
{¶ 1} Appellant Delonte Jamar Windham appeals the finding of the Richland County Juvenile Court that he is delinquent by reason of committing attempted murder.
 {¶ 2} The underlying facts are as follows.
 {¶ 3} On December 22, 2006 at approximately 10:00pm, Paul Tucker got off work at Logan's Roadhouse in Mansfield, Ohio. T. at 14. Mr. Tucker purchased four to five 22 ounce beers at a carry out. T. at 15. He then drove across Rowland Avenue in Mansfield, Ohio. T. at 18. He planned to go to his friend's home on Rowland Avenue to play video games. Id. Mr. Tucker parked his vehicle at the apartment complex parking lot next to his friend's home. Id. He sat in his vehicle drinking at least three beers, smoking cigarettes and listening to music. Id. The Windham's, his girlfriend's cousins, lived in the apartment complex near where Mr. Tucker's vehicle was parked. While Mr. Tucker was in his vehicle, appellant and his brother, Jabrell, came out of their apartment and approached the passenger side of his car. T. at 22.
 {¶ 4} Appellant asked Mr. Tucker if he had his CD. T. at 22. Mr. Tucker drove appellant in his vehicle some three weeks prior and appellant left a CD in Mr. Tucker's car. T. at 23. Mr. Tucker forgot about the CD and misplaced it. Id. Mr. Tucker ejected the CD playing and showed the brothers he did not have their CD in his vehicle. T. at 24. The brothers began raising their voices and cursing at Mr. Tucker. Id. James Little, a neighbor across the street, heard a "ruckus." T. at 78. He felt the argument was escalating into a fight and called the police. Id.
 {¶ 5} Mr. Tucker got out of his vehicle and removed his coat. T. at 25. The brothers continued to yell and use obscenities. Id. Appellant rushed at Mr. Tucker and Mr. Tucker pushed him away. T. at 26. There were three witnesses to this altercation. *Page 3 
Id. Appellant rushed at Mr. Tucker a second time and Mr. Tucker placed him in a headlock for a few seconds. T. at 27. Mr. Tucker told appellant he did not want to hurt him. Id. Appellant hit at Mr. Tucker's back and abdomen. Id. Mr. Tucker did not realize he was stabbed immediately. T. at 28. Appellant ran off. Id. Mr. Tucker realized he was bleeding. Id.
 {¶ 6} Mr. Little witnessed the incident from between 10 and 12 feet away. T. at 87. He testified that he did not see an actual knife, but he saw a "glitter." T. at 79. He took this "glitter" to be a knife in appellant's hand. Id.
 {¶ 7} Mr. Tucker had five stab wounds. T. at 32. One was a deep abdominal wound which required surgery. T. at 136. Although were only five entry wounds, there were numerous internal injuries, including multiple punctures to the bowel and colon. T. at 138.
 {¶ 8} Appellant was charged in a complaint alleging one count of attempted murder, one count of felonious assault using a deadly weapon, and one count of felonious assault causing serious physical harm. He appeared before the Richland County Juvenile Court and entered a denial to all charges.
 {¶ 9} The State initially filed a motion for a discretionary bindover to have the Appellant's case transferred to adult court. As a part of the bindover proceedings, a forensic psychological examination was conducted on appellant. At the amenability hearing, the trial court reviewed the report from the forensic examination and determined that appellant was still amenable for treatment and rehabilitation in the juvenile system. Therefore, the court overruled the State's motion for a discretionary bindover. *Page 4 
 {¶ 10} Appellant's case was set for trial on June 28, 2007. At his trial, the State presented the testimony of the victim, Paul Tucker, the neighbor, James Little, Jr., and the investigating officer, Rich Miller. The defense stipulated to the authenticity and admissibility of the victim's medical records. At the conclusion of the State's case, appellant's counsel spoke with appellant and his mother about whether appellant or his brother should testify on appellant's behalf. After this discussion, the defense indicated that it wished to rest its case.
 {¶ 11} After reviewing the evidence presented, the trial court found appellant delinquent by reason of attempted murder. In support of its verdict, the court cited the severity and number of the stab wounds to the victim, any one of which could have caused Mr. Tucker's death. The court also noted that the argument that led to the stabbing was over a trivial matter, a CD, and that deadly force was not justified.
 {¶ 12} At the dispositional hearing on June 29, 2007, the trial court committed appellant to the legal custody of the Ohio Department of Youth Services for an indeterminate period of one year to age twenty-one. Appellant now appeals the trial court's finding of delinquency raising two Assignments of Error:
 {¶ 13} "I. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BY REASON OF FAILURE TO PROVIDE APPELLANT WITH A CASE IN CHIEF."
 {¶ 14} "II. THE COURT ERRED IN FINDING APPELLANT DELINQUENT BASED ON THE CHARGE OF ATTEMPTED MURDER, AS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUPPORT THAT FINDING." *Page 5 
 I. {¶ 15} In his first assignment of error, appellant agues his trial counsel was ineffective because he failed to put appellant or his brother on the stand or develop the affirmative defense of self-defense.
 {¶ 16} The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 17} First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. As stated above, this requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675,693 N.E.2d 267. Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. State v.Carter (1995), 72 Ohio St.3d 545, 558, 1995-Ohio-104, 651 N.E.2d 965. *Page 6 
 {¶ 18} Appellant first argues his counsel was ineffective for failing to put him or his brother on the stand. This is clearly a tactical decision which falls within the realm of professional assistance. Appellant's attorney stated on the record that he discussed the case with appellant and his mother and "it is our decision to rest." T. at 120. We do not find this to be ineffective assistance of counsel.
 {¶ 19} Appellant next argues that his trial counsel should have developed a claim of self defense. In State v. Robbins (1979),58 Ohio St.2d 74, 388 N.E.2d 755, the Supreme Court of Ohio stated that to establish self defense a defendant must demonstrate:
 {¶ 20} "(1) he was not at fault in creating the situation giving rise to the affray;"
 {¶ 21} "(2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and his only means of escape from such danger was in the use of such force; and"
 {¶ 22} "(3) he must not have violated any duty to retreat or avoid danger."
 {¶ 23} The evidence established that appellant was at fault in creating the situation which gave rise to the altercation. Appellant started an argument with Mr. Tucker over a CD. T. at 22. Appellant yelled obscenities at Mr. Tucker. T. at 24. Appellant rushed Mr. Tucker. T. at 26. Mr. Tucker pushed appellant away and appellant rushed at him again a second time. T. at 27. Mr. Tucker placed him in a headlock saying he did not want to hurt appellant. Id. This shows there was not any imminent danger to appellant. At this point, appellant stabbed Mr. Tucker. T. at 27-28. Mr. Tucker was unarmed. T. at 39. Accordingly, we find that self defense was unavailable to appellant. Appellant's trial counsel was not deficient in failing to develop this defense. *Page 7 
 {¶ 24} Accordingly, appellant's first assignment of error is overruled.
 II. {¶ 25} In his Second Assignment of Error, Appellant argues the trial court's finding of guilty on attempted murder was against the manifest weight of the evidence. We disagree.
 {¶ 26} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 {¶ 27} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 28} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the *Page 8 
evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 29} Appellant argues that his conviction for attempted murder was against the manifest weight of the evidence because the State did not present direct evidence of intent to cause death. Specifically, he contends the only evidence was medical evidence. We disagree.
 {¶ 30} In this case, the State was required to prove that appellant purposely engaged in conduct which, if successful, would have resulted in the death of Mr. Tucker to convict appellant of delinquency by reason of attempted murder. R.C. § 2903.02(A) and R.C. § 2923.22(A). Purpose or intent can be established by circumstantial evidence. State v.Nicely (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236. The element of purpose required by R.C. 2903.02 may be presumed where the natural and probable consequences of a wrongful act are to produce death. State v.Hoke (July 17, 2000), 5th App. No. 99-CA-19 (unreported);State v. Shue (1994), 97 Ohio App.3d 459, 466, 646 N.E.2d 1156, citingState v. Robinson (1954), 161 Ohio St. 213, 118 N.E.2d 517, paragraph 5 of the syllabus. Intent may be inferred from all the surrounding circumstances, such as the instrument used to produce death and the manner of inflicting the fatal wound. Id.
 {¶ 31} Intent to kill Mr. Tucker may be inferred from the use of a knife or sharp object which could puncture the skin to stab him five times. Mr. Tucker was unarmed. T. at 41. The evidence further established that the wounds were inflicted in a manner which could cause Mr. Tucker's death. The State and appellant stipulated to the medical records at the outset of the trial. T. at 4. The trial court noted in its decision that the wounds were life threatening. T. at 134. The trial court discussed the medical *Page 9 
records and the severe nature of the internal injuries caused by the stabbing. T. at 135-136. The trial court concluded that the extent of the injuries were "quite important, in terms of assessing intent." T. at 138. The trial court placed significance on the number of wounds and that the fight was over a CD. T. at 138-139.
 {¶ 32} After examining the totality of circumstances, the use of a sharp object to stab Mr. Tucker five times causing life threatening injury was sufficient to support the decision of the trial court. Appellant's second assignment of error is overruled.
 {¶ 33} The decision of the Richland County Juvenile Court is affirmed.
 Delaney, J. Hoffman, P.J. and Farmer, J. concur. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Juvenile Court is affirmed. Costs assessed to appellant. *Page 1