[Cite as *State v. Hill*, 2013-Ohio-5725.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | | C.A. No.    26771 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANTHONY T. HILL, JR. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.    CR 12 04 1191 |

DECISION AND JOURNAL ENTRY

Dated: December 26, 2013

BELFANCE, Judge.

{¶1} Defendant-Appellant Anthony Hill appeals from his convictions in the Summit County Court of Common Pleas. For the reasons set forth below, we affirm in part and reverse in part.

I.

{¶2} In April 2012, outside of the Old Haunts Tavern in Akron, at least two fights broke out resulting in injuries to Ronald Lemin III and Richard Coryell. Shortly after Mr. Coryell was assaulted, he was shot and killed as he was leaving the bar and walking down the sidewalk to the nearby Circle K.

{¶3} Ultimately, in May 2012, Mr. Hill was indicted on two counts of murder involving the death of Mr. Coryell, two counts of felonious assault involving Mr. Coryell, and one count of felonious assault involving Mr. Lemin. All five counts contained accompanying firearm specifications. The matter proceeded to a jury trial at which the jury found Mr. Hill

guilty of all five counts and found that he had a firearm in committing counts one (murder), two (murder), and four (felonious assault involving Mr. Coryell). The trial court found that count two merged into count one and that count four merged into count one. Mr. Hill was sentenced to an aggregate prison term of 32 years to life.

{¶4} Mr. Hill has appealed, raising two assignments of error for our review. In order to facilitate our review, we will consider the assignments of error out of sequence.

## II.

### ASSIGNMENT OF ERROR II

APPELLANT HILL'S CONVICTION FOR MURDER UNDER COUNTS ONE AND TWO WERE BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW.

{¶5} Mr. Hill asserts in his second assignment of error that there was insufficient evidence to convict him of either count of murder. He maintains that there was insufficient evidence that he fired the shot that killed Mr. Coryell and there was insufficient evidence that he intended to kill Mr. Coryell. We do not agree.

{¶6} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶7}** Mr. Hill was convicted of violating both R.C. 2903.02(A) and 2903.02(B). R.C. 2903.02 provides in part that

(A) No person shall purposely cause the death of another * * *.

(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

**{¶8}** "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). Mr. Hill was indicted for violating R.C. 2903.02(B) by committing felonious assault. Felonious assault is an offense of violence. *See* R.C. 2901.01(A)(9)(a); *see also* R.C. 2903.11. R.C. 2903.11(A), the statute prohibiting felonious assault, states that "[n]o person shall knowingly do either of the following: (1) Cause serious physical harm to another or to another's unborn; (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

**{¶9}** Essentially, Mr. Hill asserts that there was insufficient evidence that he fired the shot that killed Mr. Coryell and there was insufficient evidence that he intended to kill Mr. Coryell or knowingly caused the serious physical harm that resulted in Mr. Coryell's death.

**{¶10}** We begin by noting that the testimony of the witnesses was varied between witnesses and occasionally inconsistent with respect to the events of that evening and early morning. Many of the witnesses were drinking, several were intoxicated, and many were entering and exiting the bar at various points in time and thus were not exposed to the same series of events. There was also evidence that Mr. Hill was intoxicated that evening and high on

Ecstasy. Mr. Hill has only challenged the sufficiency of the evidence, and thus this Court will focus on the testimony that would support his convictions.

{¶11} On the evening of April 13, 2012, Mr. Coryell, his girlfriend Jessie Brown, her friend Tiffanie VanCamp, and Joe Palmer drove to Old Haunts Tavern in Akron. Mr. Coryell and Mr. Palmer were members of a rap group known as Stack or Starve and were performing that evening. While Stack or Starve was on stage, Mr. Hill decided to get on stage and had a minor squabble with one of the members of Stack or Starve, Mike Reid. According to Mr. Hill, Mr. Reid tried to take the microphone from Mr. Hill and Mr. Hill brandished a gun. However, after that incident, things calmed down and Stack or Starve was able to perform.

{¶12} After the performances, the activity at and around the bar was centered outside. While the precise sequence of events is unclear, it is fairly clear that certain events took place that evening outside the bar. Images from video from the nearby Circle K evidences that Mr. Hill and his mother were at the Circle K from shortly after midnight until around 12:15 a.m. on April 14, 2012. Mr. Hill testified that the remaining events at issue happened after he returned from the Circle K. There were a few witnesses who testified that Mr. Hill was outside the bar stomping around on vehicles in the parking lot. Mr. Hill began to get into a fight with an unknown individual, but a witness testified to Mr. Coryell intervening. Mr. Hill continued to seek out a fight and smashed the windshield to Mr. Lemin's car. Shortly thereafter, Mr. Hill and several other people attacked Mr. Lemin and began punching and kicking him. Mr. Lemin suffered several injuries and incurred over $14,000 in hospital bills and had to miss a substantial amount of work because of his injuries.

{¶13} According to several witnesses, including Ms. Brown, Mr. Hill began to make advances toward Ms. Brown and put his arm around her. Mr. Coryell was upset by Mr. Hill's

actions toward his girlfriend and an argument ensued. Mr. Palmer testified that the argument ended, but then a bunch of people "just jumped [Mr. Coryell.]" Lawrence Turner, who is in a rap group with Mr. Hill's brother, testified to the fight that took place between Mr. Hill and Mr. Coryell. Mr. Turner averred that he saw Mr. Coryell against a wall and observed someone grab him from behind and put him in a chokehold. Other people then began "pummeling" him while he was in a chokehold. Mr. Coryell's sister also saw Mr. Coryell getting beat up and testified that "there [were] ten to 15 guys [who] had [her] brother up against the wall of the bar and they were kicking him and punching him." Mr. Hill himself admitted to being involved in both fights.

{¶14} After the fight involving Mr. Coryell, Ms. Brown and Mr. Coryell's sister tried to get him to come with them to the car and leave but Mr. Coryell refused. He proceeded to walk down the sidewalk toward the Circle K and told the women that they should pick him up at the Circle K. At this point, Mr. Turner testified about what he saw.

> It seemed like [Mr. Coryell] ran toward the gas station. And it seemed like everybody who was jumping [him] ran after him. And then that's when I turned toward the gas station and * * * saw [Mr. Hill] shoot. I [did not] see [Mr. Coryell] go down because * * * it's like there was a wall blocking my vision of [Mr. Coryell], but I could still see him * * *.

{¶15} While Mr. Turner was the only witness who testified to seeing Mr. Hill shoot, a police interview with Mr. Hill was played for the jury in which he admits to shooting at Mr. Coryell. In that interview, Mr. Hill stated that Mr. Coryell had given Mr. Hill the middle finger and said that he was going to shoot him and his group, after which Mr. Hill fired a single shot at Mr. Coryell. Mr. Hill did not watch what happened after he fired and indicated that he turned around as soon as he shot him. After the shooting, Mr. Hill got in his mother's car with several other people including his brother, mother, and sister. There was evidence, including Mr. Hill's

testimony, that, after the shooting, Mr. Hill threatened to kill himself. During Mr. Hill's police interview, he was, at times, visibly upset and indicated concern about spending his life in prison. While at trial Mr. Hill testified that he lied during the interview to cover for his cousin, whom he claimed had committed the murder, such testimony would go to the weight of the evidence and not the sufficiency.

{¶16} The medical examiner testified that Mr. Coryell died from a single long-range gunshot wound to the head. Based on the path of the bullet through Mr. Coryell's brain, the medical examiner indicated that "one would expect Mr. Coryell to be instantly incapacitated, just fall to the ground at the time of this injury." A 9 mm shell casing was recovered near where Mr. Coryell's body was found. While the weapon was never recovered, Mr. Hill admitted to having a 9 mm handgun during parts of that night and early morning.

{¶17} In light of the foregoing, we conclude that sufficient evidence was presented, if believed and viewed in a light most favorable to the prosecution, that Mr. Hill fired the shot that killed Mr. Coryell and that he intended to kill him.

{¶18} Mr. Turner testified to seeing Mr. Hill fire the weapon shortly before Mr. Coryell's body was discovered on the nearby sidewalk, and Mr. Hill himself, during his police interview, admitted to shooting at Mr. Coryell. Additionally, the evidence supported the conclusion that Mr. Hill had a 9 mm weapon on him that evening and that a 9 mm gun was used to kill Mr. Coryell. Thus, there was sufficient evidence when viewed in a light most favorable to the prosecution that it was Mr. Hill who shot Mr. Coryell.

{¶19} With respect to Mr. Hill's intent or lack therefore, this Court has stated that purpose or intent can be established by circumstantial evidence. *State v. Shue,* 97 Ohio App.3d 459, 466 (9th Dist.1994). There was evidence in the record that would support that Mr. Hill and

Mr. Coryell were not getting along well that evening. Mr. Hill interfered with Stack or Starve's performance and brandished a weapon in response to one of the members trying to take back the microphone from Mr. Hill. Mr. Coryell was observed by at least one witness interfering with one of the fights in the parking lot that Mr. Hill was trying to start, and Mr. Coryell and Mr. Hill had a disagreement over Mr. Hill's treatment of Mr. Coryell's girlfriend that appears to have ultimately resulted in Mr. Coryell being attacked by several people. Additionally, Mr. Hill stated in his interview with police that Mr. Coryell had given him the middle finger and threatened to shoot people in Mr. Hill's group immediately prior to Mr. Hill shooting Mr. Coryell. Accordingly, there was evidence that Mr. Hill had a motive to shoot Mr. Coryell. Further, the evidence supports the conclusion that Mr. Coryell was killed by a single long-range shot to the head from a 9 mm weapon. As noted above there was sufficient evidence whereby a jury could conclude that Mr. Hill shot Mr. Coryell in the head. Viewing the evidence in the light most favorable to the State, we likewise conclude that there was sufficient evidence that it was Mr. Hill's specific intent to kill him. *See id.* In light of the foregoing, we overrule Mr. Hill's second assignment of error.

ASSIGNMENT OF ERROR I

APPELLANT HILL'S CONVICTION FOR FELONIOUS ASSAULT AGAINST RICHARD CORYELL UNDER COUNT THREE WAS BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW.

{¶20} Mr. Hill asserts in his first assignment of error that his conviction for felonious assault under count three was based upon insufficient evidence. Given the evidence in the record, we agree.

**{¶21}** In this assignment of error, Mr. Hill challenges his conviction for violating R.C. 2903.11(A)(1), one of the charges that involved Mr. Coryell. Mr. Hill does not challenge any of his other convictions for felonious assault. Our analysis will be limited accordingly.

**{¶22}** R.C. 2903.11(A)(1) provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). R.C. 2901.01(A)(5) provides that

"Serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

**{¶23}** "'Substantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). Additionally, we note that with respect to this count, the jury was instructed under a theory of complicity as well. R.C. 2923.03(A) states in part that, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * (1) [s]olicit or procure another to commit the offense; [or] (2) [a]id or abet another in committing the offense[.]"

{¶24} Mr. Hill argues that there was insufficient evidence presented that, during the fight prior to the shooting, Mr. Coryell suffered serious physical harm.[1] Several witnesses saw the altercation between Mr. Coryell and Mr. Hill and others that arose over Mr. Coryell's girlfriend, Ms. Brown. Ms. VanCamp testified that the argument started as a verbal dispute but proceeded to a fistfight. Ms. VanCamp testified that "[t]hey were both punching each other[ and that she couldn't] remember who threw the first punch." One of the members of Stack or Starve, Mr. Palmer, testified that he saw Mr. Coryell and Mr. Hill arguing over Ms. Brown but that the two appeared to make up. However, then Mr. Palmer saw Mr. Hill hit Mr. Coryell and then "they just started fighting." Lots of people became involved in the fight. Mr. Palmer indicated that it appeared that "they just jumped him." Mr. Turner testified that he saw Mr. Coryell against the wall and saw someone put Mr. Coryell in a chokehold and people just started "pummeling" him while he was in a chokehold. Mr. Coryell's sister testified that she saw her "brother up against the wall of the bar and [there were 10 to 15 guys] kicking him and punching him." Additionally, Mr. Hill admitted to getting into a fight with Mr. Coryell, although Mr. Hill claimed it was because Mr. Coryell was complaining about Mr. Hill stomping on the cars. Mr. Hill indicated that there were 25 to 30 other people involved in the fight.

{¶25} The medical examiner testified that, aside from the gunshot wound, there were additional "blunt force injuries." He described them as follows:

> These are injuries from blows to the body surface. That could be someone punching him or hitting him with something and also from him falling down on a surface. And he had these small scrapes or abrasion on his forehead. These are

---

[1] We note that during deliberations the jury had a question about what count three involved. It asked if count three involved the physical fight between Mr. Hill and Mr. Coryell. After speaking with both counsel, the trial court responded affirmatively. Thus, the serious physical harm caused by the shooting will not be considered in this analysis. Notably, the State does not challenge the notion that count three was limited to the physical altercation between Mr. Hill and Mr. Coryell.

the types of abrasions that can be seen when one impacts against a surface like a concrete sidewalk or even a block wall that was behind him. * * * When [the scalp is reflected] in this area he has bruising underneath this area of abrasion which is not surprising to have bruising of the scalp if one did impact a hard surface and * * * so they are consistent with each other, but also evidence of vital reaction or action or reaction to having some life. So he developed a good bruise on the scalp indicating, once again, that's consistent with him having life maybe not conscious, but have had some activity of life such as his heart beating and breathing for a few minutes after having been injured. * * * He has on the left side of his head here a really faint abrasion. Not that obvious, but there is a small abrasion on his left side of his scalp. Behind the right ear there is a more faint abrasion. It's very superficial, this reddish area behind his ear. * * * On the back of his neck you can see his ears and his hairline. This is his upper shoulder, upper back area. He has several small abrasions or scrapes. On his back he has two more superficial scrapes or abrasions. On his right knee he has a superficial abrasion, very small again. And that's the sum total of his blunt force injuries.

{¶26} There was no other testimony about the extent of Mr. Coryell's injuries or any testimony about what kind of consequences those types of injuries would have caused had Mr. Coryell not been shot and killed. While it is possible that the State could have elicited testimony from the medical examiner that would have evidenced that Mr. Coryell suffered serious physical harm as contemplated by R.C. 2901.01(A)(5), it did not do so. It is not even clear that all of the injuries occurred during the fistfight. The medical examiner testified that Mr. Coryell would have been instantly incapacitated by the gunshot and that some of his injuries could have been the result of him falling to the ground. Nonetheless, even assuming that all of the injuries were caused by the fistfight that Mr. Hill was a part of, we cannot say there was sufficient evidence presented that Mr. Coryell suffered serious physical harm. Many of Mr. Coryell's injuries were described as superficial or minor and it appears that the most concerning injury may have been a bruise to Mr. Coryell's scalp. There was no indication that those injuries carried a substantial risk of death, nor was there evidence that they would result in disfigurement (such as a scar), incapacity, substantial suffering, or prolonged pain. *See* R.C. 2901.01(A)(5). While we have no doubt there was sufficient evidence that Mr. Coryell was assaulted and suffered physical harm as

a result thereof, because there was no evidence presented that Mr. Coryell suffered serious physical harm as a result of the fist fight prior to the shooting, Mr. Hill's conviction for felonious assault under count three is based upon insufficient evidence. We sustain Mr. Hill's first assignment of error.

## III.

**{¶27}** In light of the foregoing, we overrule Mr. Hill's second assignment of error and sustain his first assignment of error. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded.

Judgment affirmed in part,
reversed in part,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

> EVE V. BELFANCE
> FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.